**Karen Elizabeth WADDLE, Appellant**

v.

**Thomas Ray WADDLE and Nancy Diane Waddle, Appellees.**

**No. 2014–CA–000576–ME.**

Court of Appeals of Kentucky.

Oct. 17, 2014.

Amber Hunt Sisco, Pikeville, KY, for Appellant.

John T. Chafin, Prestonsburg, KY, for Appellee.

Before ACREE, Chief Judge; CLAYTON and MOORE, JUDGES.

*OPINION*

CLAYTON, Judge:

Karen Elizabeth Waddle appeals from an order of the Floyd Family Court that granted Thomas Ray Waddle and Nancy Diane Waddle grandparent visitation. After careful consideration, we reverse and remand.

**FACTS**

Karen and Kyle Waddle were married on May 19, 2011. During the marriage, they had a son, K.R.W. (hereinafter "K.R."), who was born on June 21, 2011. On November 20, 2012, Karen filed a petition for the dissolution of the marriage. Simultaneously, she also filed a motion for temporary custody of K.R. At the time of the filing of these motions, Kyle was incarcerated. On January 25, 2013, Karen was granted temporary sole custody of K.R., and on October 22, 2013, a decree of dissolution was entered reserving the remaining issues for a hearing to be held October 24, 2013.

Prior to the filing of the dissolution petition, on April 25, 2012, Thomas and Nancy, the paternal grandparents of K.R., had filed a petition for grandparents' visitation. The case was designated as 12–CI–00410. Karen objected to grandparent visitation being granted to them. However, on September 12, 2012, an order was entered, which granted them grandparent visitation every other Saturday for five-hour periods. This order was based on an agreement between the grandparents and the parents.

Subsequently, on February 4, 2013, the family court entered an order affirming

this visitation schedule in the grandparent visitation case. Another hearing was scheduled in this case for April 5, 2013, but the family court determined to hold the action in abeyance pending the outcome of the divorce action. Thereafter, the grandparents made a motion to intervene in the dissolution action, which the family court, on April 18, 2013, granted.

During most of the pendency of the dissolution action, the father, Kyle, was incarcerated. Nonetheless, at a time when he was not incarcerated, he made a motion for visitation, which was granted by the family court. The order of visitation required that Thomas and Nancy supervise Kyle's visitation with his son. Kyle's order of visitation superseded the order of grandparent visitation since it included the time period of the grandparents' visitation, and they supervised it. However, a couple of months after the entry of the visitation order, Karen made a motion to suspend or restrict Kyle's visitation because he had been arrested on a second-degree burglary charge.

After Kyle was incarcerated again, on September 20, 2013, the grandparents made another motion to establish grandparent visitation. In the motion, they noted that their son, Kyle, had legal issues that may result in his incarceration and, therefore, they requested that they be permitted to exercise Kyle's visitation time. Kyle responded to the motion by noting that he had no objection to it. Karen vehemently objected to the motion and filed a motion to suspend or restrict both the grandparents and Kyle's visitation.

After the October 24, 2013 hearing, the family court entered an order on November 4, 2013, granting visitation to the grandparents and setting the times for the visitation. The order, however, contained no findings. In addition, the order required Kyle, when released from incarcer-ation, to file an appropriate motion for visitation or to exercise his visitation during the grandparents' visitation.

On January 24, 2014, after a hearing at which the grandparents requested that their visitation be increased to standard visitation, the family court granted their request and ordered that their visitation be increased to the visitation set out in the family court's standard visitation schedule. Karen filed a response objecting to the order of standard visitation for the grandparents. She argued that they had not established by clear and convincing evidence as required under *Walker v. Blair*, 382 S.W.3d 862 (Ky.2012), that an increase in visitation was in the best interests of K.R.

Karen then filed a motion to alter, amend, or vacate and for specific findings on February 7, 2014. A review hearing was held on February 19, 2014, on Karen's motion. On March 10, 2014, the family court entered two orders. One order contained findings of fact and conclusions of law that determined that it was in the best interest of the child that the grandparents have visitation with K.R. consistent with the standard visitation schedule. The second order denied Karen's motion to alter, amend, or vacate and reiterated that grandparent visitation was in K.R.'s best interest. Karen now appeals from the March 10, 2014 order granting Thomas and Nancy grandparent visitation.

Karen argues that the order of visitation should be reversed because the family court did not give special weight to her objection as a parent to Thomas and Nancy having grandparent visitation, and it erred in finding by clear and convincing evidence that visitation was in the best interests of K.R. Karen maintains that the family court erred by not applying the modified best interest standard set forth in *Walker*. In response, Thomas and Nancy

simply contend that the family court did not abuse its discretion in awarding them standard visitation.

## STANDARD OF REVIEW

A family court's factual findings are reviewed for clear error. Kentucky Rules of Civil Procedure (CR) 52.01. A finding supported by substantial evidence is not clearly erroneous. *Moore v. Asente*, 110 S.W.3d 336, 354 (Ky.2003). Substantial evidence is that which is "sufficient to induce conviction in the mind of a reasonable person." *Rearden v. Rearden*, 296 S.W.3d 438, 441 (Ky.App.2009). Furthermore, we must give due regard to the family court's opportunity "to judge the credibility of the witnesses." CR 52.01.

However, the interpretation of Kentucky Revised Statutes (KRS) 405.021 and the application of the appropriate standard to the facts are issues of law and, consequently, are reviewed *de novo*. *Hill v. Thompson*, 297 S.W.3d 892, 895 (Ky.App.2009).

## ANALYSIS

■ Statutory guidance regarding whether a family court should grant grandparent visitation is found in KRS 405.021. The statute permits a circuit court to grant reasonable visitation to grandparents if the court makes a finding that it is in the best interest of the child to do so. KRS 405.021(1).

This statutory rule, however, is impacted by constitutional issues, which were addressed in *Troxel v. Granville*, 530 U.S. 57, 120 S.Ct. 2054, 147 L.Ed.2d 49 (2000). That case recognizes that parents have a constitutionally protected liberty interest in rearing their children without government interference. This liberty interest extends to parents' desires involving nonparent visitation. The Court held that "there is a presumption that fit parents act in the best interests of their children." *Id.*, 530 U.S. at 68, 120 S.Ct. at 2061.

In Kentucky, the issue of grandparent visitation was further clarified by the Kentucky Supreme Court in *Walker v. Blair*. Therein, the Court stated that a "court must presume that a fit parent is making decisions that are in the child's best interest." *Walker*, 382 S.W.3d at 870. The Court then noted that in order to rebut this presumption, a grandparent must establish by clear and convincing evidence that grandparent visitation is in the child's best interest. *Id.* at 871. Hence, the grandparent must prove that the fit parent is clearly wrong in his or her belief that grandparent visitation is not in the child's best interest. *Id.* The Court instructed that "[i]f the grandparent fails to present such evidence to the court, then parental opposition alone is sufficient to deny the grandparent visitation." *Id.*

The *Walker* court then described several factors a family court may consider to determine whether visitation is in the child's best interest. In doing so, the *Walker* court recognized the modified best interest standard established by our Court sitting *en banc*. *Vibbert v. Vibbert*, 144 S.W.3d 292 (Ky.App.2004). The *Vibbert* court labeled the standard as a modified best interest standard because a court begins with the presumption that when a "fit" parent objects to visitation that visitation is not in the child's best interest. To overcome this presumption, a grandparent must provide clear and convincing evidence that the visitation is in the child's best interest. *Id.* at 295.

To make this determination, *Vibbert* held that a trial court must consider a broad array of factors, including but not limited to:

the nature and stability of the relationship between the child and the grandparent seeking visitation; the amount of

time spent together; the potential detriments and benefits to the child from granting visitation; the effect granting visitation would have on the child's relationship with the parents; the physical and emotional health of all the adults involved, parents and grandparents alike; the stability of the child's living and schooling arrangements; [and] the wishes and preferences of the child.

*Id.* Accordingly, the grandparent seeking visitation must address these factors and establish, by clear and convincing evidence, that the requested visitation is in the best interest of the child.

The *Walker* court approved the modified best interest standard in *Vibbert* and added another factor for the family court's consideration-the motivation of the adults in either prohibiting or pursuing visitation. *Walker*, 382 S.W.3d at 871.

Karen argues that in granting visitation to the grandparents, the family court did not give her the special weight due a fit parent and that the Waddles failed to rebut by clear and convincing evidence the presumption that Karen is acting in K.R.'s best interest. We agree.

First, we review the actions of the family court to sort out the rationale behind its decision. At the conclusion of the October 24, 2012 hearing, the family court stated that the grandparents met their burden of proving that they had a loving relationship with K.R. and visitation was in his best interest. Yet, no findings were entered nor were the factors in the modified best interest standard considered. Also, no deference was given to Karen's parental objection to the visitation.

Subsequently, Thomas and Nancy filed a motion for their visitation to be increased to the court's standard visitation schedule. They argued that they should be allowed to step into the shoes of Kyle. The family court granted the motion. This order was entered without any evidentiary hearing, which was requested by Karen.

Next, on February 7, 2014, Karen made the motion to alter and a request for more specific findings. Curiously, on February 19, 2014, the family court entered an order, which set grandparent visitation from noon on Saturday until 6:00 p.m. on Sunday every other weekend and denied the grandparents' motion for standard visitation. On February 20, 2014, the family court signed an order, entered on March 10, 2014, taking Karen's motion under advisement and allowing the parties ten days to submit proposed orders.

Then, on February 21, 2014, the family court signed an order, entered on March 10, 2014, which took the motion to alter under advisement and set grandparent visitation at every other weekend from Friday at 7:00 p.m. until Sunday at 6:00 p.m. Next, the family court signed an *ex parte* order on February 26, 2014, which was entered on March 10, 2014, setting aside the February 19, 2014 order.

On March 4, 2014, the family court signed an order, entered on March 10, 2014, that provided findings of fact, conclusions of law, and held that it was in the child's best interest to have visitation with the grandparents consistent with the court's standard visitation schedule. Further, in an order signed on March 7, 2014, and entered on March 10, 2014, the family court entered another order with findings, conclusions and order, which denied Karen's motion to alter, amend, or vacate the order of standard visitation.

While it is difficult to discern the reason for the flurry of orders, it is obvious from the actions of the family court that it did not recognize or give any deference to Karen's objections to grandparent visitation. It is not necessary for a court to ascertain whether a parent is fit but rather

the court must presume that a fit parent is making decisions in the best interest of the child. *Walker*, 382 S.W.3d at 870. Thomas and Nancy have made no allegations that Karen is unfit or does not adequately provide for K.R.

■ Moreover, the findings by the family court are not sufficient since they do not entail any consideration of the modified best interest standard provided in case law to assist courts in decisions concerning grandparent visitation when parents object. The family court did not consider the factors in *Walker*, and it also never referenced the need for clear and convincing evidence. Lastly, it merely found that the grandparents had a loving relationship and that visitation was in K.R.'s best interest. As observed in *Walker*, clear and convincing evidence of a loving relationship is not enough to overcome the parental presumption. *Id.* at 872.

The basis for the family court's findings was Thomas's and Nancy's statements that they were involved in the child's life while Karen and Kyle lived with them (a period of nine months), that they took care of K.R. while Karen was incarcerated (for 10 days), and that they loved the child.

As noted, the family court never addressed that Karen, who was the sole custodian and a "fit" parent, objected to the visitation. Additionally, the family court never applied the modified best interest standard in this case to determine if grandparent visitation was in the child's best interest notwithstanding the parental objection. Thomas and Nancy never provided clear and convincing evidence to establish, pursuant to the modified best interest standard, that grandparent visitation with them was compelling enough to override Karen's objections and that visitation with them, despite her objections, served K.R.'s best interest. Therefore, neither the ev-

idence proffered nor the findings made were sufficient to support an award of grandparent visitation in light of Kentucky statutory and case law provisions.

Another argument by Thomas and Nancy to bolster their position that the family court did not abuse its discretion is that both *Troxel* and *Walker* are distinguishable because in those cases either both parents objected to the visitation or one parent was deceased. They maintain that this situation is different because Kyle does not object to grandparent visitation. This contention, however, is unpersuasive since Karen is K.R.'s sole custodian and financial supporter. Neither Kyle nor his parents provide any financial support for the child. Thus, she is the parent who makes parental decisions regarding K.R. Significantly, this family court is the one that designated Karen as the sole custodian; clearly, it deems her to be a fit parent. Since we have decided that the family court did not properly apply the facts to the pertinent law for the award of grandparent visitation, it is not necessary for us to consider the efficacy of the award of grandparent visitation under the standard visitation schedule.

CONCLUSION

We reverse the decision of the Floyd Family Court because it did not apply the appropriate standard in deciding whether grandparent visitation was in the best interest of K.R. Furthermore, we vacate the order of visitation, and remand with directions to conduct a new evidentiary hearing on the Waddles' petition for grandparent visitation. In doing so, the family court should use the legal standard provided in *Walker*.

Under this standard, the family court must presume that Karen, as K.R.'s par-

ent, is acting in his best interest, and the grandparents, to rebut this presumption, must provide clear and convincing evidence that visitation with them is in the child's best interest. The family court should consider the factors in the modified best interest standard, which are found in *Walker*. Additionally, the family court must provide written findings of fact.

ALL CONCUR.