MAZE, JUDGE:
*659 Michael Goodlett appeals from an April 20, 2016, order of the Knox Family Court granting grandparent visitation to Bill and Marsha Brittain (collectively, "the Brittains"). The Brittains also appeal from that order, alleging that the visitation awarded was inadequate. Thereafter, Goodlett filed a notice of appeal from a February 22, 2017, order directing all parties to comply with the original visitation order. As an initial matter, we conclude that the trial court had subject matter jurisdiction even though the Brittains withdrew their petition prior to its service on Goodlett. However, we agree with Goodlett that the trial court's factual findings were insufficient to justify an award of grandparent visitation. Hence, we reverse and remand for entry of additional findings. Consequently, the issues raised in the Brittains' cross-appeal and Goodlett's subsequent appeal are now moot. Hence, we dismiss those appeals.
Facts and Procedural History
Goodlett is the father of two children, ZDG (born November 2009), and ZMG (born March 2011). The children's mother, Alesha, separated from Goodlett in 2014. She and the children resided with her parents, Bill and Marsha Brittain, beginning in March 2014. During this time, the Brittains helped Alesha care for the children while she underwent treatment for cancer. Goodlett had regular visitation with the children during this period.
In December 2014, Alesha filed a petition for dissolution of the marriage in the Bell Circuit Court. She also filed a motion for temporary custody of the children, which the circuit court granted. However, Alesha died on February 2, 2015, and shortly thereafter, Goodlett took custody of the children. The Brittains attempted to intervene in the dissolution action, and also brought a motion to establish grandparent visitation. But on March 17, 2015, the Bell Circuit Court denied the motions and dismissed the case, concluding that the dissolution action was subject to automatic abatement upon Alesha's death.
On March 25, 2015, the Brittains filed the current action in the Knox Family Court, seeking grandparent visitation pursuant to KRS 1 405.021. Goodlett and the Brittains initially attempted to come to an agreement regarding visitation, but were unable to do so. In September 2015, the trial court entered an agreed order for temporary grandparent visitation. On Goodlett's motion, the trial court scheduled an evidentiary hearing on the petition for grandparent visitation, which the trial court held on March 16, 2016.
At the conclusion of that hearing, the trial court granted visitation to the Brittains. The trial court gave the Brittains visitation with the children on alternate Saturday afternoons, with overnight visitation once a month beginning after a 120-day period. The court's oral findings were *660 memorialized by a written order entered on April 20, 2016.
Goodlett and the Brittains each filed a motion to alter, amend or vacate the order. Goodlett argued that the written order failed to reflect the trial court's oral ruling, and the Brittains argued that their visitation was inadequate. The trial court denied both motions on April 27, 2016. This appeal and cross-appeal followed. Subsequently, Goodlett filed an appeal from February 22, 2017, order re-setting the Brittains' visitation to the original terms. These appeals are now submitted to this Court to be heard together. Additional facts relevant to these appeals will be set out below.
Jurisdictional issue
On June 12, 2017, this Court directed the parties to file supplemental briefs to address whether the trial court properly exercised subject-matter jurisdiction in this case. As we noted in that order, the Brittains filed a motion to withdraw their petition on April 10, 2015, before the petition was served on Goodlett. On April 27, the trial court granted their motion to withdraw the petition and dismissed the case. However, on June 26, 2015, the Brittains filed a motion under the same case number, seeking to re-open and re-docket their prior petition. The trial court granted the motion to re-open during a motion hearing on July 10, 2015. Goodlett filed his response to the petition and the matter then proceeded to the visitation order at issue in these appeals.
In our prior order, we questioned whether the trial court properly exercised jurisdiction over the re-opened petition. While neither of the parties raise this issue, it is well-established that a judgment entered by a court without subject-matter jurisdiction is void. Hisle v. Lexington-Fayette Urban Cty. Gov't , 258 S.W.3d 422, 430 (Ky. App. 2008). Therefore, the issue may be raised at any time, including on the Court's own motion. Id. at 431. See also Goff v. Goff , 172 S.W.3d 352, 358 (Ky. 2005), and Duncan v. O'Nan , 451 S.W.2d 626, 631 (Ky. 1970).
In the present case, however, the trial court did not act outside of its general subject-matter jurisdiction, but only outside of its particular-case jurisdiction. While the former can never be waived by the parties, the latter can be waived if the error is not presented to the trial court. Commonwealth v. Steadman , 411 S.W.3d 717, 724-25 (Ky. 2013). Here, the trial court clearly had subject-matter jurisdiction over a petition for grandparent visitation. However, the trial court lost particular-case jurisdiction when it dismissed the petition at the Brittains' request.
We must again emphasize that a trial court loses jurisdiction to modify or amend a judgment more than ten days after a final order is entered. CR 2 52.02. See also Commonwealth v. Marcum , 873 S.W.2d 207, 211 (Ky. 1994) ; and Silverburg v. Commonwealth , 587 S.W.2d 241, 244 (Ky. 1979). After that time, a trial court does not have unfettered authority to re-open a case. Rather, the court's authority to re-open a final order is subject to the provisions of CR 60.02. In this case, the Brittains did not allege any grounds under CR 60.02 to set aside that order. Under such circumstances, the trial court lacked jurisdiction to proceed under the previously-filed petition. Rather, the Brittains were required to file a new petition seeking grandparent visitation.
Nevertheless, Goodlett did not object to the motion to re-open the case, nor did he request specific findings under CR 60.02. Had he done so, our conclusions on this *661 issue necessarily would be different. However, Goodlett effectively consented to the trial court's exercise of jurisdiction over the particular case, and waived any right to raise the issue on appeal. Steadman , 411 S.W.3d at 725-26. While we do not approve of the failure to follow the requirements of CR 60.02, that deficiency did not affect the trial court's subject-matter jurisdiction over this case.
Appeal Nos. 2016-CA-000632-ME & 2016-CA-000786-ME
Turning to the merits of the appeals, Goodlett first argues that the trial court's written visitation order was inconsistent with its oral ruling following the evidentiary hearing. However, it is well-established that the court speaks through its "written orders entered upon the official record." Oakley v. Oakley , 391 S.W.3d 377, 378 (Ky. App. 2012), citing Kindred Nursing Centers Ltd. Partnership v. Sloan , 329 S.W.3d 347, 349 (Ky. App. 2010). Furthermore, Goodlett raised this issue in his post-judgment motion, and the trial court stated that its written order reflected its final determination regarding visitation. Therefore, we find no further basis to review this issue.
Goodlett primarily argues that the Brittains failed to overcome the presumption that he is acting in the best interests of the children. We review the trial court's factual findings under the clearly-erroneous standard. Reichle v. Reichle , 719 S.W.2d 442, 444 (Ky. 1986). A finding supported by substantial evidence is not clearly erroneous. Moore v. Asente , 110 S.W.3d 336, 354 (Ky. 2003). Substantial evidence is that which is "sufficient to induce conviction in the mind of a reasonable person." Rearden v. Rearden , 296 S.W.3d 438, 441 (Ky. App. 2009). Moreover, we must give due regard to the trial court's opportunity "to judge the credibility of the witnesses." CR 52.01. However, the trial court's interpretation and application of KRS 405.021 in accordance with federal constitutional law and the application of the appropriate standard to the facts are issues of law and subject to de novo review by this Court. Walker v. Blair , 382 S.W.3d 862, 867 (Ky. 2012).
The parties agree that the controlling issue in this appeal concerns the proper application of the decision of the Kentucky Supreme Court in Walker v. Blair , supra. The Court in Walker began with the statutory authority for grandparent visitation, which did not exist as common law. KRS 405.021(1) permits a circuit court to grant visitation to maternal or paternal grandparents of a child and to issue any necessary orders to enforce the decree if it determines that it is in the best interest of the child to do so.
However, the Court in Walker noted that the statutory basis for grandparent visitation must be considered in light of the constitutional considerations set out by the United States Supreme Court in Troxel v. Granville , 530 U.S. 57, 120 S.Ct. 2054, 147 L.Ed.2d 49 (2000). In Troxel , a majority of the Court found that parents have a fundamental liberty interest in the care, custody, and control of their children, that "[t]here is a presumption that fit parents act in the best interests of their children." Id. at 68, 120 S.Ct. 2054. In applying this standard, the Court in Walker further explained,
[s]o long as a parent is fit, there will normally be no reason for the state to inject itself into the private realm of the family to further question the ability of that parent to make the best decisions concerning the rearing of that parent's children. So a fit parent's wishes are not just a factor to consider in determining what is in the child's best interest. The constitutional presumption that a fit parent *662 acts in the child's best interest is the starting point for a trial court's analysis under KRS 405.021(1).
Id. at 870-71 (footnotes and internal quotations omitted).
To overcome the presumption the parent is acting in the child's best interests, the grandparents must show, by clear and convincing evidence, that visitation is in the child's best interest. Id. at 871. In making this determination, a trial court must consider a broad array of factors, including but not limited to: the nature and stability of the relationship between the child and the grandparent seeking visitation; the amount of time spent together; the potential detriments and benefits to the child from granting visitation; the effect granting visitation would have on the child's relationship with the parents; the physical and emotional health of all the adults involved, parents and grandparents alike; the stability of the child's living and schooling arrangements; and the wishes and preferences of the child. Id. , citing Vibbert v. Vibbert , 144 S.W.3d 292, 294-95 (Ky. App. 2004).
A grandparent is not required to show that a denial of visitation will cause actual harm to the child. Id. at 872 ; Vibbert , 144 S.W.3d at 294. On the other hand, the mere existence of a close relationship between the grandparents and the children, or the fact that the children lived in the grandparents' home for a time, will not always be sufficient to overcome the parental presumption. See Waddle v. Waddle , 447 S.W.3d 653, 657 (Ky. App. 2014). Finally, a fit parent does not waive his objections to entry of a grandparent visitation order merely because he never entirely denied visitation to the grandparents. Fairhurst v. Moon , 416 S.W.3d 788, 792 (Ky. App. 2013). Rather, the court must presume that the parent has the right to impose any limitations on a grandparent's visitation with the children. Id. at 792.
There is no dispute in this case that the children have a long and close relationship with the Brittains. Marsha Brittain provided child care for the children since their births. After Alesha was diagnosed with cancer, Marsha moved into the Goodletts' home to take care of Alesha, the children, and most of the household chores. When Goodlett and Alesha separated in May of 2014, they all moved to the Brittains' home in March of 2014. The children lived there until their mother's death in February 2015.
Goodlett does not contend that the Brittains are unfit to have visitation with the children. He does not object to the children maintaining a relationship with the Brittains, but he does not want to have that relationship governed by a court order. Goodlett stated that he has concerns about Marsha's possessiveness of the children. He also has concerns about Marsha's statements to the children about wanting them to "come home" with her, as well as her perceived undermining of his role as a parent. Goodlett also presented evidence that Marsha had an emotional outburst at him during one of the visitation periods. He further alleges that Marsha's sister once offered to pay him if he gave them custody of the children. Marsha's sister, Sandra Adams, confirmed making this offer to Goodlett.
In addition, Goodlett has continuing resentments about the Brittains' involvement in the dissolution proceedings, and the fact that they have repeatedly brought petitions for grandparent visitation. In particular, he points to the "Bell County incident," which occurred shortly before Christmas of 2014. When Goodlett arrived at the Brittains' house to have visitation with the children, the Brittains refused to allow the children to leave with him.
*663 Thereafter, Alesha's attorney in the dissolution action, who also served as the Bell County Attorney, obtained a restraining order which prohibited Goodlett from having any contact with the children until it was set aside in mid-January of 2015.
Goodlett feels that the Brittains orchestrated the dissolution action and the restraining orders. He also feels that the Brittains used their connections with local law enforcement, the county attorney, and the Bell County courts to deny him visitation with the children for over a month. For these reasons, Goodlett is concerned that the Brittains will attempt to keep the children if they are allowed to have unsupervised visitation in Bell County.[3]
The trial court's written order only mentions the close relationship between the Brittains and the children. The court discussed the standards set out in Walker but did not make any particular findings as to any of the factors. In its statements from the bench, the trial court emphasized that this is a very difficult case, and that all parties appear to be acting in the best interests of the children. The court acknowledged that Goodlett had legitimate concerns about the Brittains' past behavior. The court believed that much of the animosity between the parties arose from the "Bell County incident," and suggested that Goodlett would not have such a great objection to visitation if the restraining order had not been entered. However, the court declined to cast blame expressly on the Brittains, suggesting that Alesha's attorney in the divorce proceeding may have "stirred the pot" and precipitated this dispute.
But in granting visitation to the Brittains, the court was most convinced by the long-established relationship between the Brittains and the children, and by the fact that Goodlett did not object to the children having a relationship with their grandparents. Consequently, the court concluded that regular, scheduled visitation would be in the best interests of the children. To address Goodlett's concerns, the court expressly held that Knox County has jurisdiction over the matter, and consequently, the Brittains cannot attempt to obtain custody of the children from the Bell County courts. The court also set out the graduated visitation schedule to see how the parties behaved, with increased visitation for the Brittains contingent upon their good behavior.
The facts of this case are most similar to those presented in Waddle v. Waddle , supra. In that case, as in the current case, the mother and child also lived in the grandparents' home for an extended period of time. However, this Court still reversed the trial court's order granting visitation, noting that the trial court failed to address the clear-and-convincing evidence standard necessary to overcome the parental presumption. Id. , 447 S.W.3d at 657. Rather, the trial court merely made a conclusory finding that the grandparents had a loving relationship and that visitation was in the child's best interest. Id. This Court concluded that the findings were insufficient to support an award of grandparent visitation under the Walker standard, and remanded for additional evidence and findings. Id.
This case also presents similarities to a more-recent case, *664 Nein v. Columbia , 517 S.W.3d 492 (Ky. App. 2017). In Nein , as in the current case, the paternal grandparents were the primary daycare providers for the child for most of his life. In addition to the close bond between the child and the grandparents, the grandparents also gave both mother and child significant financial support. Furthermore, there was evidence that the lack of contact had a negative impact on the child. The child told the court that he wanted to spend more time with his grandparents. In addition, the court noted that the mother's decision to restrict visitation was motivated, in part, by the grandmother's refusal to lend her money. The court noted that the mother would likely discontinue all visitation in the absence of a court order. Id. at 497. In light of all of this evidence, the trial court in Nein found, and this Court agreed, that the grandparents rebutted the presumption that the mother was acting in the child's best interests. Id. at 498.
We recognize that the trial court is not obligated to make findings on all of the Walker factors, but only those which are most relevant to determining whether grandparent visitation is clearly in the children's best interest. Massie v. Navy , 487 S.W.3d 443, 447 (Ky. 2016). But here, as in Waddle , the trial court only identified the long-established and close relationship between the Brittains and the children as a factor in favor. Without additional findings under the other applicable Walker factors, that factor alone was not sufficient to warrant court intervention.
And unlike in Nein , there was no evidence that the children in this case have suffered as a result of the reduction in contact with their grandparents. The trial court pointed to the absence of any evidence that the children have been negatively affected by the bad blood between Goodlett and the Brittains. And while the children are still mourning the loss of their mother, all parties agree that they are well-adjusted and mostly happy children. There was no evidence that they had been brought into the middle of the dispute, and even Marsha's emotional outburst appears to have been outside of their presence. Goodlett claims that the Brittains have undermined his authority with the children, but he did not point to any particular examples of such conduct.
Since the Brittains have the burden of proof, they had the obligation to present evidence that visitation over Goodlett's objections would be in the children's best interest. The trial court's oral findings suggest that it clearly understood the difficulty and complexity of the dispute before it. But while the trial court addressed Goodlett's concerns in formulating the amount of visitation, it is not clear that the trial court gave presumptive weight to Goodlett's superior rights as a parent, or to the fact that the Brittains had the burden of proving that Goodlett's assessment of the best interests of the children was incorrect. In addition, the court gave improper weight to Goodlett's willingness, at least on his terms, to allow the Brittains to maintain a relationship with the children.
Under the circumstances, the most appropriate remedy is to vacate the award of grandparent visitation and remand this matter for additional findings of fact in accord with the standard set out in Walker v. Blair and Waddle v. Waddle . Under this standard, the trial court must presume that Goodlett is acting in the children's best interests. To rebut this presumption, the Brittains must provide clear and convincing evidence that visitation is in the children's best interest, applying the applicable factors in the modified-best-interest standard. Additionally, the trial court must provide written findings of fact with reference to the specific evidence supporting its determinations.
*665 We would also add that the central focus of this matter should be what is in the best interests of the children. Like the trial court, we accept that the parties love the children and want what is best for them. Ideally, the parties should be able to work through their differences for the benefit of the child. But where a grandparent seeks the intervention of the courts to compel visitation, the decision of the parent must prevail absent a clear and convincing showing by the grandparent in favor of such visitation. Anything less would elevate the grandparent to equal status with a custodial parent.
In their cross-appeal, the Brittains argue that the trial court's visitation schedule was inadequate, and they should be allowed to "step into Alesha's shoes," and have custodial visitation according to the standard visitation schedule. Given our finding above, we conclude that this issue is moot. We will only say that entry of such visitation is discretionary, provided that the terms of KRS 405.021(3) are satisfied.
Appeal No. 2017-CA-00445-ME
After the filing of the prior notices of appeal, the Brittains filed a motion in the trial court to hold Goodlett in contempt for failure to comply with the visitation order. Goodlett responded that the notices of appeal divested the trial court of jurisdiction. Goodlett separately moved to hold the Brittains in contempt, or in the alternative, for clarification of the visitation order. Goodlett filed a motion with this Court seeking to stay further proceedings in the trial court.
On October 20, 2016, this Court entered an order denying the motion to stay, expressly holding that the trial court retains jurisdiction to enforce its orders. Thereafter, on October 28, 2016, the trial court entered an order passing the motions for contempt, and directing that the break-in period set out in the original order start over. Furthermore, the court directed all parties to strictly comply with the visitation order.
However, the visitation disputes continued unabated. The Brittains and Goodlett each moved to hold the other in contempt for alleged violations of the visitation order. Following a hearing, the trial court again passed the motions for contempt, and entered an order resetting the break-in period of the visitation order. The court orally advised the Brittains that the visitation was for them alone, with no other family members present. Thereafter, Goodlett filed a notice of appeal from this order.
Goodlett contends that the original order and the "reset" order are void due to lack of subject-matter jurisdiction. Having addressed this argument above, we need not address it again. Goodlett further argues that the trial court lacked jurisdiction to enforce or modify the visitation order while the matter was on appeal. He contends the "reset" order actually served to modify the prior visitation order, and was thus outside of the trial court's jurisdiction while the earlier appeals were pending.
As a general rule, the filing of a notice of appeal divests the trial court of jurisdiction to rule on any issues while the appeal is pending, except with respect to issues of custody and support in a domestic relations case. Johnson v. Commonwealth, 17 S.W.3d 109, 113 (Ky. 2000). See also City of Devondale v. Stallings , 795 S.W.2d 954, 957 (Ky. 1990). Visitation is typically regarded as a custody matter under KRS Chapter 403, and Goodlett does not argue that a different standard should apply to grandparent visitation under KRS 405.021. Therefore, we agree with the motion panel that the trial court retained *666 jurisdiction to enforce its prior visitation orders.
Finally, we see no indication that the trial court's February 22, 2017, order modified the terms of the prior visitation order, except to place the parties in the same position as they were at the time the April 20, 2016, order was entered. Furthermore, the trial court did not find Goodlett in contempt for any of the alleged violations of the visitation order. Since we are setting aside the original visitation order for additional findings, we conclude that any issues regarding enforcement of those orders are now moot.
Accordingly, we reverse the April 20, 2016, order of the Knox Family Court and remand this matter for additional proceedings and findings as set forth in this opinion. The appeals in Case Nos. 2016-CA-000786-ME and 2017-CA-000445-ME are dismissed as moot.
ALL CONCUR.

Goodlett perceives that the Brittains have undue influence with the Bell County courts because the county attorney previously represented Alesha in the dissolution action. However, a county attorney is permitted to maintain a private civil practice to the extent that it does not conflict with his official duties. Apart from Goodlett's perception, there was no evidence that Alesha's counsel exercised undue influence in the dissolution proceeding.