RENDERED: JUNE 24, 2022; 10:00 A.M.
NOT TO BE PUBLISHED

# Commonwealth of Kentucky

# Court of Appeals

NO. 2021-CA-0397-MR

TRAVIS SHELTON AND CHELSEA
SHELTON                                                                          APPELLANTS

APPEAL FROM WAYNE FAMILY COURT
v.        HONORABLE JENNIFER UPCHURCH EDWARDS, JUDGE
ACTION NO. 18-CI-00309

RICHIE ATKINSON AND MALISSA
ATKINSON                                                                              APPELLEES

OPINION
REVERSING AND REMANDING

** ** ** ** **

BEFORE: CALDWELL, CETRULO, AND MAZE, JUDGES.

CALDWELL, JUDGE: Travis and Chelsea Shelton (hereinafter "the Sheltons")

appeal from the Wayne Family Court order granting hourly monthly visits with

their children to Richie and Malissa Atkinson (hereafter "the Atkinsons" or

"Chelsea's parents"), who are Chelsea Shelton's parents and the children's

grandparents. Having reviewed the order of the family court, the proceedings

below, and the briefs of the parties, we reverse and remand this matter to the family court for further proceedings consistent with this Opinion.

## RELEVANT FACTS AND PROCEDURAL HISTORY

Chelsea and Travis Shelton have two children, a boy born in 2012, and a girl born in 2016. Chelsea's parents, Malissa and Richie Atkinson, were involved grandparents and enjoyed spending time with their daughter and their grandchildren. However, after several years, and after the relationship between the Sheltons and Chelsea's parents deteriorated, the Sheltons decided it was not in their children's best interests to allow Chelsea's parents to continue to see the children. The Sheltons stopped interacting with Chelsea's parents and the children did not see their grandparents any longer. In November of 2018, the Atkinsons filed the underlying action seeking visitation with their grandchildren. Following unsuccessful mediation and subsequent COVID-19 delays, a hearing on the motion was finally held in August of 2020.

The court took the matter under advisement and later issued an order granting the Atkinsons hourly monthly visitations with their grandchildren. The family court held that the Atkinsons had not ever placed the children in danger in any way. It was further found that the children could benefit from the love, support, and affection of two additional grandparents and extended maternal family members.

The court found the primary reason offered by the Sheltons in ceasing contact with Chelsea's parents was their concern with the Atkinsons' interference with their roles as parents, and the Sheltons' belief that the grandparents were overbearing and unwilling to step back and allow the Sheltons to parent as they saw fit. Both parents admitted in their testimony the possibility of resuming contact at some point, provided the Atkinsons would respect their boundaries as parents. However, both expressed doubts that the Atkinsons would ever do so. The court further found that, otherwise, the children's home and school environments with their parents are stable and appropriate.

The Sheltons filed a motion to alter, amend, or vacate and a second hearing was held. At the hearing, the Sheltons argued that the COVID-19 pandemic, the fact that their son had an autoimmune disorder, and that Richie Atkinson was a postal contractor who had contact with people throughout his day, all should have been considered by the court. The family court upheld the visitation order, amending the order only to require that visits occur out of doors when the weather permits such. It is from this order that the Sheltons appeal.

## STANDARD OF REVIEW

On review, we accept the findings of fact of the family court unless we find them to be clearly erroneous. *Reichle v. Reichle*, 719 S.W.2d 442 (Ky.

1986). The review of the application of the law to the found facts is conducted *de novo*. *Keeney v. Keeney*, 223 S.W.3d 843 (Ky. App. 2007).

## ANALYSIS

First, we cannot ignore the deficiencies in the Appellants' brief; specifically, the failure to comply with the minimal requirements of Kentucky Rule of Civil Procedure ("CR") 76.12(4)(c)(4), in that the Statement of the Case contains not one citation to the record on appeal, though the Procedural History does contain citations to the record. Such is a failure to comply with the Civil Rules.

> Our options when an appellate advocate fails to abide by the rules are: (1) to ignore the deficiency and proceed with the review; (2) to strike the brief or its offending portions, CR 76.12(8)(a); or (3) to review the issues raised in the brief for manifest injustice only, *Elwell v. Stone*, 799 S.W.2d 46, 47 (Ky. App. 1990).

*Hallis v. Hallis*, 328 S.W.3d 694, 696 (Ky. App. 2010).

The rules of appellate procedure are necessary to the efficiency and fairness of the system of justice and are not mere formalities. We will ignore the deficiency and proceed with the review in this matter as the facts below are not voluminous and are not the result of multiple hearings or a weeks' long trial. But again, we caution counsel to be cognizant of the Civil Rules and endeavor to follow their requirements lest the outcome of a subsequent failure demands a different response from this Court.

-4-

As to the heart of this matter, there is perhaps no more fundamental

constitutional right than that of a parent to raise his or her child in the manner that

a parent believes is best.[1]  Different parents with different life experiences, varying

---

[1]         The Fourteenth Amendment provides that no State shall "deprive any person of life, liberty, or property, without due process of law."  We have long recognized that the Amendment's Due Process Clause, like its Fifth Amendment counterpart, "guarantees more than fair process." *Washington v. Glucksberg*, 521 U.S. 702, 719, 117 S. Ct. 2258 [2267, 138 L. Ed. 2d 772] (1997).  The Clause also includes a substantive component that "provides heightened protection against government interference with certain fundamental rights and liberty interests." *Id.*, at 720, 117 S. Ct. 2258; see also *Reno v. Flores*, 507 U.S. 292, 301-302, 113 S. Ct. 1439, 123 L. Ed. 2d 1 (1993).

The liberty interest at issue in this case – the interest of parents in the care, custody, and control of their children – is perhaps the oldest of the fundamental liberty interests recognized by this Court.  More than 75 years ago, in *Meyer v. Nebraska*, 262 U.S. 390, 399, 401, 43 S. Ct. 625, 67 L. Ed. 1042 (1923), we held that the "liberty" protected by the Due Process Clause includes the right of parents to "establish a home and bring up children" and "to control the education of their own." Two years later, in *Pierce v. Society of Sisters*, 268 U.S. 510, 534-535, 45 S. Ct. 571, 69 L. Ed. 1070 (1925), we again held that the "liberty of parents and guardians" includes the right "to direct the upbringing and education of children under their control."  We explained in *Pierce* that "[t]he child is not the mere creature of the State; those who nurture him and direct his destiny have the right, coupled with the high duty, to recognize and prepare him for additional obligations." *Id.*, at 535, 45 S. Ct. 571.  We returned to the subject in *Prince v. Massachusetts*, 321 U.S. 158, 64 S. Ct. 438, 88 L. Ed. 645 (1944), and again confirmed that there is a constitutional dimension to the right of parents to direct the upbringing of their children.  "It is cardinal with us that the custody, care and nurture of the child reside first in the parents, whose primary function and freedom include preparation for obligations the state can neither supply nor hinder." *Id.*, at 166, 64 S. Ct. 438.

In subsequent cases also, we have recognized the fundamental right of parents to make decisions concerning the

belief systems, and disparate basic, fundamental mores would likely not make the

same parenting decisions; there is no "one size fits all."  It is only when parenting

decisions impact the safety, health, or welfare of the child that the government can

and shall intervene.

---

care, custody, and control of their children.  See, *e.g.*, *Stanley v. Illinois*, 405 U.S. 645, 651, 92 S. Ct. 1208, 31 L. Ed. 2d 551 (1972) ("It is plain that the interest of a parent in the companionship, care, custody, and management of his or her children 'come[s] to this Court with a momentum for respect lacking when appeal is made to liberties which derive merely from shifting economic arrangements'" (citation omitted)); *Wisconsin v. Yoder*, 406 U.S. 205, 232, 92 S. Ct. 1526, 32 L. Ed. 2d 15 (1972) ("The history and culture of Western civilization reflect a strong tradition of parental concern for the nurture and upbringing of their children.  This primary role of the parents in the upbringing of their children is now established beyond debate as an enduring American tradition"); *Quilloin v. Walcott*, 434 U.S. 246, 255, 98 S. Ct. 549, 54 L. Ed. 2d 511 (1978) ("We have recognized on numerous occasions that the relationship between parent and child is constitutionally protected"); *Parham v. J. R.*, 442 U.S. 584, 602, 99 S. Ct. 2493, 61 L. Ed. 2d 101 (1979) ("Our jurisprudence historically has reflected Western civilization concepts of the family as a unit with broad parental authority over minor children. Our cases have consistently followed that course"); *Santosky v. Kramer*, 455 U.S. 745, 753, 102 S. Ct. 1388, 71 L. Ed. 2d 599 (1982) (discussing "[t]he fundamental liberty interest of natural parents in the care, custody, and management of their child"); *Glucksberg*, *supra*, at 720, 117 S. Ct. 2258 ("In a long line of cases, we have held that, in addition to the specific freedoms protected by the Bill of Rights, the 'liberty' specially protected by the Due Process Clause includes the righ[t] . . . to direct the education and upbringing of one's children" (citing *Meyer* and *Pierce*)).  In light of this extensive precedent, it cannot now be doubted that the Due Process Clause of the Fourteenth Amendment protects the fundamental right of parents to make decisions concerning the care, custody, and control of their children.

*Troxel v. Granville*, 530 U.S. 57, 65-66, 120 S. Ct. 2054, 2059-60, 147 L. Ed. 2d 49 (2000).

The relationship between a child and a grandparent can be, and often is, the most nurturing and valued of all relationships. Parents must discipline their children, they must make their children do things that the children often do not want to do, they must guide their children in making choices that are not always fun or preferred. Such is the work of parenting. Grandparents, however, when not providing primary care for their grandchildren, often enjoy a relationship which is more about enjoyment of time spent together and less about character development. Such is the glory of grandparenting.

Unfortunately, sometimes parents and grandparents disagree or do not have a relationship between themselves which is without tumult. And, as is unfortunately often the case, when such occurs, the child loses out on an opportunity to have healthy relationships with both parents and grandparents. When parents and grandparents have contentious relationships, where it is not possible for those differences to be put aside in the interests of the child enjoying interactions with all who love him or her, a choice must be made. On this the law is clear – that choice belongs to the parents when they are found to be fit.

In *Walker v. Blair*, the Kentucky Supreme Court held that a fit parent is presumed to act in their child's best interest. Given the right of a person to parent one's own children as one sees fit, this presumption can only be overcome

by clear and convincing evidence.[2]  The family court correctly identified this standard in its order.  In *Walker*, the Kentucky Supreme Court instructed that "[i]f the grandparent fails to present such evidence to the court, then parental opposition alone is sufficient to deny the grandparent visitation."  382 S.W.3d at 871.  We must determine whether the family court's order pointed to evidence which overcame this presumption.  We find it did not.

In *Walker*, the Court provided factors for courts to consider in determining whether the petitioning grandparent or grandparents had overcome this very strong presumption in favor of the wishes of the parent or parents.

> A trial court can look at several factors to determine whether visitation is clearly in the child's best interest. The *Vibbert* court laid out many of these factors, including:
>
> 1) the nature and stability of the relationship between the child and the grandparent seeking visitation;
>
> 2) the amount of time the grandparent and child spent together;
>
> 3) the potential detriments and benefits to the child from granting visitation;

---

[2] "In accordance with *Troxel*, we hold that a fit parent is presumed to act in the best interest of the child.  A grandparent petitioning for child visitation contrary to the wishes of the child's parent can overcome this presumption of validity only with clear and convincing evidence that granting visitation to the grandparent is in the child's best interest."  *Walker v. Blair*, 382 S.W.3d 862, 866 (Ky. 2012).

4) the effect granting visitation would have on the child's relationship with the parents;

5) the physical and emotional health of all the adults involved, parents and grandparents alike;

6) the stability of the child's living and schooling arrangements; and

7) the wishes and preferences of the child.

To this list, we add:

8) the motivation of the adults participating in the grandparent visitation proceedings.

*Walker*, 382 S.W.3d at 871.

First, we acknowledge that a child's interests are best served when a child's parents enjoy a healthy, mutually respectful relationship between themselves, thus providing the child not only with stability, but an example for the future of a healthy adult relationship. *See Obergefell v. Hodges*, 576 U.S. 644, 668, 135 S. Ct. 2584, 2600, 192 L. Ed. 2d 609 (2015).[3] We note that the facts establish that the Sheltons only excluded the Atkinsons after a tumultuous time in

---

[3] "By giving recognition and legal structure to their parents' relationship, marriage allows children 'to understand the integrity and closeness of their own family and its concord with other families in their community and in their daily lives.' [*United States v. Windsor*, 570 U.S. 744, 772-73, 133 S. Ct. 2675, 2694-95, 186 L. Ed. 2d 808 (2013)]. Marriage also affords the permanency and stability important to children's best interests. See Brief for Scholars of the Constitutional Rights of Children as *Amici Curiae* 22-27."

their marriage and because they believed that the Atkinsons would add to that tumult should they be involved in the family.

In *Massie v. Navy*, the Kentucky Supreme Court clearly indicated that the trial court should consider the *Walker* factors relevant to the case.[4] We find that the reason for the estrangement here – the Sheltons' belief that the involvement of the Atkinsons would have a negative effect on their family unit by potentially bringing harm to the marriage and interference with the parenting decisions of the Sheltons – was not just *a* relevant factor in the decision, but was *the* relevant factor for the court to consider and its failure to give due consideration to the parents' judgment on this matter amounts to clear error.

We find the family court's order to be inadequate in several respects. First, the order fails to even acknowledge that the Sheltons are fit parents, though such is certainly implied by the analysis undertaken; it would not be appropriate to apply the *Walker* factors were the family court not to have presumed fitness.[5]

---

[4] "Moreover, the facts of each case dictate which *Walker* factors are most relevant and possibly dispositive. In other words, all eight *Walker* factors need not be considered when determining whether grandparent visitation is clearly in the child's best interest." *Massie v. Navy*, 487 S.W.3d 443, 447 (Ky. 2016).

[5] We do not question the fitness of the Sheltons in any way but are simply pointing out a deficiency of the Family Court's order. *See Walker*, 382 S.W.2d at 871 ("[T]he trial court should not attempt to determine whether the parent is actually fit before presuming that the parent is acting in the child's best interest. The trial court must presume that a parent adequately cares for his or her child (*i.e.*, is fit) and acts in the child's best interest.").

-10-

Further, the order does not specifically find that the Sheltons' concerns about their perception that the Atkinsons' deleterious effect upon their marriage would be harmful to the children is not legitimate or was a matter of spite.

> A grandparent can rebut the presumption that a fit parent acts in the child's best interest by presenting proof that the parent is not actually acting in the child's best interest. If the parent is motivated purely by spite or vindictiveness, this can be proof that the parent is acting out of self-interest rather than a concern for the child's best interest. It may also be the case that a parent is acting out of spite, but the best interest of the child truly is not served by granting grandparent visitation. So proof of vindictiveness on the parent's part does not automatically rebut the parental presumption. It is likewise true that grandparents may also act out of spite or vindictiveness in seeking visitation. The trial court should also consider the grandparent's motivation when determining whether grandparent visitation is in the child's best interest.

*Walker*, 382 S.W.3d at 872-73.

The order entered is not sufficient given its failure to specifically find that, by clear and convincing evidence, visitation with the grandparents was in the children's best interest, given the Sheltons' concerns about the impact such visitation might have on their family unit, with no specific finding that their stated concerns were not legitimate or were spiteful. It is not sufficient to find that the grandparents had spent time with the children and had a loving relationship to overcome the presumption that a fit parent has the right to determine whether it is in the child's best interest to have a relationship with the grandparent.

-11-

If the only proof that a grandparent can present is that they spent time with the child and attended holidays and special occasions, this alone cannot overcome the presumption that the parent is acting in the child's best interest. The grandparent must show something more – that the grandparent and child shared such a close bond that to sever contact would cause distress to the child. Again, these determinations are fact-intensive. But we can imagine such a close bond, for example, in situations where the child and grandparent lived in the same household for a period of time, or where the grandparent regularly babysat the child. To allow visitation on a lesser showing would put fit grandparents on equal footing as fit parents, which violates the Due Process Clause.

*Id*. at 872.

The order entered simply contains no specific findings of fact in support of the determination and is conclusory in nature. There is no recitation of facts which establishes "such a close bond" that not allowing the visitation would "cause distress to the child[ren]." *Id*.

By its very terms, that paragraph of the statute requires no specific time period or strength of relationship between the child and the grandparent. Further, paragraph (b) allows a trial court to find a significant and viable relationship between the child and the grandparent if "[t]he grandparent had frequent or regular contact with the child for at least twelve (12) consecutive months." This paragraph could be met if the grandparent merely babysat the children on a regular basis or hosted a family dinner that the child attended once each week. While we agree that such regular contact would likely show a relationship exists, it does not necessarily show the strength of that relationship and certainly does not show

-12-

that the parents are not fit or that the grandparent acted *in loco parentis.*

*Pinto v. Robison*, 607 S.W.3d 669, 675 (Ky. 2020).

There are simply no facts presented in the order to establish that the Atkinsons had the sort of relationship with the children which would result in harm by not allowing visitation, and such is required. This Court has been clear that not only must a trial court review the *Walker* factors, but it must make specific findings as to those factors.

> We recognize that the trial court is not obligated to make findings on all of the *Walker* factors, but only those which are most relevant to determining whether grandparent visitation is clearly in the children's best interest. *Massie v. Navy*, 487 S.W.3d 443, 447 (Ky. 2016).

*Goodlett v. Brittain*, 544 S.W.3d 656, 664 (Ky. App. 2018).

An order which cites factual findings as to the factors to be considered, citing the facts of the case, and then concludes summarily that facts exist which speak to several of the factors, alone, is insufficient to support a conclusion to overcome the strong parental presumption. Rather, there must be specific findings as to the factors and a determination that those findings overcome the presumption that the fit parents are acting in the children's best interest in denying the visitation.

> Under this standard, the trial court must presume that [the parent] is acting in the children's best interests. To rebut

> this presumption, the [grandparents] must provide clear and convincing evidence that visitation is in the children's best interest, applying the applicable factors in the modified-best-interest standard. Additionally, the trial court must provide written findings of fact with reference to the specific evidence supporting its determinations.

*Id.* at 664.

The order acknowledges that the Atkinsons are loving grandparents and recites that the children spent time with them prior to the falling out between the adults, but such is simply not sufficient to establish by clear and convincing evidence that the fundamental right of the parents to have involved in their children's lives only those persons they believe will best serve the interests of the children and the family should be overborne.

In failing to make such findings, the court's order did not honor the parents' fundamental right to parent their children as they deem fit in determining who they allow to be involved in their children's lives. When fit parents have reason to believe that allowing a third party – even a grandparent – to have access to children might bring harm to the familial unit by harming the bond between the parents and between the parents and the children, that opinion should be respected. And that opinion can only be overcome by clear and convincing evidence that a relationship with the third party is paramount to the child's best interests. *See Fairhurt v. Moon*, 416 S.W.3d 788, 792 (Ky. App. 2013) ("[T]he trial court must

presume that [parents] have the right to impose any limitations on a grandparent's visitation with the children."). In essence, the grandparents must convince the court that the fit parents are mistaken in believing that the children's best interests are served by denying the grandparents an opportunity to spend time with the children.

> In other words, the grandparent must show that the fit parent is clearly mistaken in the belief that grandparent visitation is not in the child's best interest. If the grandparent fails to present such evidence to the court, then parental opposition alone is sufficient to deny the grandparent visitation.

*Walker*, 382 S.W.3d at 871.

The order entered by the Wayne Family Court does not establish that it found the parents mistaken in their belief. This presumption is ever more integral when the parents have reason, as the Sheltons do, to believe that allowing the grandparents to be involved in the children's lives may cause disruption of the family unit. Given that a healthy immediate family unit is in the best interests of children, there must be a specific finding that the relationship with the grandparents, even should it cause strife in the family unit, is in the children's best

interests to support a finding that granting entre to others who might disrupt or stress that family unit is proper.[6]

The Wayne Family Court clearly gleaned that there was animosity between the Sheltons and the Atkinsons as the order granting the one-hour once monthly visitation to the Atkinsons contained the following conditions:

> 2. No party shall speak negatively to or in the presence of either child about any party to this action.
>
> 3. No party shall post on social media any statements, photographs or videos of or about any party to this case or the children.
>
> 4. This case shall not be discussed with the children other than to let them know they get to visit their maternal grandparents and when.

Such conditions are a tacit acknowledgement that the relationship between the parents and grandparents is not without rancor. The order even acknowledged that the primary motivation of the parents in denying the grandparents visitation with the children was the concern that the Atkinsons would interfere with the Sheltons' parenting decisions.[7] Despite this clear discernment, the order completely failed to

---

[6] "Requiring a child to have visitation with a grandparent who has extreme animosity toward the child's parent would be inherently unhealthy for the child and would potentially undermine the relationship between the child and its parent."

*Grayson v. Grayson*, 319 S.W.3d 426, 432 (Ky. App. 2010).

[7] "Chelsea and Travis' primary concern is Richie and Malissa's interference with their role as parents and that they are overbearing and unwilling to step back and allow Chelsea and Travis to parent [the children] without attempting to insert themselves into that role." Court order, paragraph 8.

-16-

give due consideration to the parental decision that to expose the children to such rancor was not in the children's best interest. An order which summarily cites facts without delving into how such facts, collectively, establish clear and convincing evidence that the wishes of fit parents must be overcome, is not sufficient. We, therefore, remand this matter to the family court for findings of fact which support the family court's conclusion, or, if the family court upon further consideration cannot so craft an order, an order denying the grandparents' petition for visitation.

## CONCLUSION

We find the family court failed to give due consideration to the most relevant factor in this matter – the potential detriments and benefits to the children from granting visitation. We do not imply that the Atkinsons are not loving grandparents, for they clearly are. However, it is not enough for a court to determine that grandparents love their grandchildren and share a healthy, nurturing relationship with those children to overcome the presumption that fit parents make decisions in children's best interests. We reverse the Wayne Family Court and remand this matter for the entry of an order consistent with this Opinion.

ALL CONCUR.

BRIEF FOR APPELLANTS:        BRIEF FOR APPELLEES:

Lee Whittenburg                Frank V. Phillips
Monticello, Kentucky        Monticello, Kentucky