RENDERED: OCTOBER 6, 2023; 10:00 A.M.
NOT TO BE PUBLISHED

# Commonwealth of Kentucky

# Court of Appeals

NO. 2022-CA-0869-MR

GEORGE RUDY CUNDIFF                                  APPELLANT


               APPEAL FROM MUHLENBERG CIRCUIT COURT
v.                  HONORABLE BRIAN WIGGINS, JUDGE
                     ACTION NO. 20-CI-00138


DENISE JERNIGAN AND AMBER
DEARMOND                                         APPELLEES


<u>OPINION</u>
<u>AFFIRMING</u>

** ** ** ** **

BEFORE: EASTON, LAMBERT, AND McNEILL, JUDGES.

LAMBERT, JUDGE: George Rudy Cundiff (Rudy) appeals the Muhlenberg

Circuit Court's order denying grandparent visitation with C.S.C. (the Child). After

careful review of the record, including the video of the hearing, and applicable

statutory and case law, we affirm.

         The Child was born in 2016 to Amber Dearmond and Seth Cundiff,

Rudy's son. During the Child's infancy, Seth raised him for the most part as a

single parent. Amber was not an active participant in the family.[1] Seth and the Child lived either with Rudy or in a nearby house provided by Rudy.

In April 2017, Seth (having received full custody) and the Child again moved in with Rudy. Meanwhile, Seth began a relationship with Jennifer Denise Jernigan (Denise), who worked at the Child's daycare. Soon Denise also moved in with Rudy. Denise would take the Child with her to work and bring him home again in the evening. She also provided care in Rudy's home, fixing supper for everyone and making sure the Child was fed and bathed. By October of that year, Seth, Denise, and the Child had moved back to the other house.

Denise and Seth maintained their relationship until April 2019, when Denise moved out. Prior to the couple's breakup, there were times that Seth would move back in with Rudy, but the Child mostly stayed with Denise. Denise, who was by then working elsewhere, continued to manage the Child's care, including driving him to and from daycare every day. Denise also claimed that Seth spent most of his time at her new residence, and that it was Rudy who was behind her being evicted from Seth's house. However, the Child still spent some time at Rudy's home (mostly on the weekend), where the Child had his own room and many of his belongings. But Denise insisted, when she testified at the hearing, that

---

[1] In fact, Amber has since consented to termination of her parental rights to the Child.

she ensured that Rudy was never alone in caring for the Child, and that either Seth or Loraine (Rudy's wife) was there also.

In September 2019, the Child stayed with Denise only, while Seth fluctuated between her residence and his father's. This arrangement continued until December 2019, when Rudy shot and killed Seth in an argument at Rudy's home. The Child was in the home when this event occurred, although there was conflicting testimony at the hearing concerning how much the Child actually witnessed. Rudy was indicted and tried for Seth's murder, but the jury ultimately acquitted Rudy, finding that he had shot Seth in self-defense.

Shortly after Seth's death, by order of the Muhlenberg District Court, Denise was given sole custody of the Child, and Rudy was prohibited from having contact with the Child. Once acquitted, though, Rudy sought to resume his relationship with the Child. In March 2020, Rudy filed a petition for grandparent visitation with the Child, pursuant to Kentucky Revised Statute (KRS) 405.021, in Muhlenberg Circuit Court. The final hearing was held in June 2022, and the order denying Rudy's requested visitation was entered by the end of that month. Rudy filed a timely notice of appeal.

We begin by enunciating our standard of review, namely:

[W]e will review the family court's findings of fact under a clearly erroneous standard of review, giving due regard to the opportunity of the family court to judge the credibility of the witnesses. *Walker v. Blair*, 382 S.W.3d

862, 867 (Ky. 2012) (citing CR[2] 52.01; *Reichle v. Reichle*, 719 S.W.2d 442, 444 (Ky. 1986) (applying CR 52.01 to review of child custody cases)). We review the interpretation of KRS 405.021 like other issues of law – de novo. *Id.* at 867; *Morton v. Tipton*, 569 S.W.3d 388, 396 (Ky. 2019) (issues of law are reviewed on appeal under a de novo standard).

*Blackaby v. Barnes*, 614 S.W.3d 897, 900 (Ky. 2021). *See also Goodlett v. Brittain*, 544 S.W.3d 656, 661 (Ky. App. 2018).

KRS 405.021(1)(b) and (c), which addresses grandparent visitation when the parent of a child is deceased, states that:

> (b) If the parent of the child who is the son or daughter of the grandparent is deceased, there shall be a rebuttable presumption that visitation with the grandparent is in the best interest of the child if the grandparent can prove a pre-existing significant and viable relationship with the child.
>
> (c) In order to prove a significant and viable relationship under paragraph (b) of this subsection, the grandparent shall prove by a preponderance of the evidence that:
>
> > 1. The child resided with the grandparent for at least six (6) consecutive months with or without the current custodian present;
> >
> > 2. The grandparent was the caregiver of the child on a regular basis for at least six (6) consecutive months;
> >
> > 3. The grandparent had frequent or regular contact with the child for at least twelve (12) consecutive months; or

---

[2] Kentucky Rules of Civil Procedure.

4.  There exist any other facts that establish that the loss of the relationship between the grandparent and the child is likely to harm the child.

The "rebuttable presumption" section of KRS 405.021(1)(b) has been held to be unconstitutional in *Pinto v. Robison*, 607 S.W.3d 669 (Ky. 2020). However, the *Pinto* Court said:

> This opinion should not be read to hold that all grandparent visitation statutes are unconstitutional. In fact, we are leaving intact KRS 405.021(1)(a) and KRS 405.021(3) as potential avenues for a trial court to grant grandparent visitation so long as the trial court complies with *Walker* [*v. Blair*, 382 S.W.3d 862 (Ky. 2012),] in applying those subsections of the statute. We recognize the changing dynamics of families in today's society and the important and influential role that extended family members, especially grandparents, play in raising today's children.

607 S.W.3d at 677.

*Walker*, *supra*, states that:

> It is typical in grandparent visitation determinations for grandparents to present proof of the nature of the relationship between the grandparent and child. The question arises whether clear and convincing proof of a loving relationship alone is enough to overcome the parental presumption. Except in special circumstances, it is not enough. Kentucky courts cannot presume that grandparents and grandchildren will always benefit from contact with each other. If the only proof that a grandparent can present is that they spent time with the child and attended holidays and special occasions, this alone cannot overcome the presumption that the

-5-

parent is acting in the child's best interest.  The
grandparent must show something more – that the
grandparent and child shared such a close bond that to
sever contact would cause distress to the child.  Again,
these determinations are fact-intensive.  But we can
imagine such a close bond, for example, in situations
where the child and grandparent lived in the same
household for a period of time, or where the grandparent
regularly babysat the child.  To allow visitation on a
lesser showing would put fit grandparents on equal
footing as fit parents, which violates the Due Process
Clause.

*Walker*, 382 S.W.3d at 872 (footnote omitted).

Here, the circuit court correctly considered these relevant factors in

determining that denying Rudy his requested visitation was in the best interests of

the Child.  The circuit court carefully analyzed the facts presented before it, giving

special attention to the testimony concerning the Child's emotional distress

stemming from the events which took place at his grandfather's home when Seth

was killed.  The court acknowledged that, while Rudy and the Child enjoyed a

close relationship in the Child's early life, there had been no such bond for the last

two and a half years.  *Walker*, 382 S.W.3d at 871.

The circuit court summed up the evidence before it in these words:

"[T]his case presents tragic and challenging facts for the court to consider.  In the

end, however, upon consideration of all the evidence under the standard set out in

*Walker* and *Pinto*, *supra*, this court is compelled to deny Rudy's request."

We agree that the circuit court based its decision upon the facts presented to it, when analyzed pursuant to the statute and current case law.

Accordingly, the order of the Muhlenberg Circuit Court is affirmed.

ALL CONCUR.


BRIEFS FOR APPELLANT:

Ryan Bennett Driskill
Greenville, Kentucky

BRIEF FOR APPELLEE DENISE JERNIGAN:

Taylor C. Evans
Madisonville, Kentucky