Stephanie GRAYSON; Shane Grayson; S1 Grayson; and S2 Grayson, Appellants,

v.

June GRAYSON, Appellee.

No. 2009–CA–001963–ME.

Court of Appeals of Kentucky.

July 16, 2010.

Jonathan D. Whitaker, Lexington, KY, for appellants, Stephanie Grayson and Shane Grayson.

Jeffrey L. Schumacher, Maysville, KY, for appellee.

Before DIXON and VANMETER, Judges; LAMBERT,[1] Senior Judge.

## OPINION

LAMBERT, Senior Judge:

Stephanie Grayson and Shane Grayson are husband and wife and the parents of S1 Grayson, a minor female, and S2 Grayson, a minor female. They appeal to this Court from the September 28, 2009, findings of fact, conclusions of law, and amended judgment of the Mason Circuit Court. That judgment granted Appellee June Grayson, paternal grandmother of S1 and S2 Grayson, limited grandparent visitation with the children over the vehement objection of the children's parents, Appellants herein. Upon our determination that the trial court erred in its conclusion and judgment that grandparent visitation was in the children's best interest, we reverse.

The evidence in this case reveals extreme vitriol by the paternal grandmother, Appellee herein, toward her daughter-in-law and, perhaps to a lesser degree, toward her son, Appellants herein. It is equally clear that Appellants dislike Appellee and want her to have no contact with their children. Various wounds inflicted by these parties upon one another have been festering for years. It is unnecessary to narrate the distasteful behavior of Appellee toward her daughter-in-law and son, or, as she claims, their mistreatment of her. Instead, we will rely on quotations from the trial court's findings of fact. Findings no. 1 and 2 set the stage:

1. Respondents Shane Grayson and Stephanie Grayson (hereinafter Mother and Father) were married in 1994 and have two daughters [S1] Grayson, age 8 and [S2] Grayson, age 5. Mother is a

---

1. Senior Judge Joseph E. Lambert sitting as Special Judge by assignment of the Chief Justice pursuant to Section 110(5)(b) of the Kentucky Constitution and Kentucky Revised Statutes (KRS) 21.580.

teacher and Father is a Sales Manager and active in the children's school site based committee.

2. Petitioner June Grayson, hereinafter Grandmother, babysat often for the children and had significant contact with them early in their lives.

Thereafter, the trial court found as follows:

3. Father and Dave Grayson (hereinafter Grandfather) worked together and built the house in which Mother and Father live.

4. Early on there were incidents that upset Mother and Father regarding Grandmother's conduct which included swerving a car at them 16 years ago. Despite these problems contact with and involvement with the children continued until "Good Friday" 2007. On that date an incident took place in which Grandmother threatened to contact Social Services. At that point Mother and Father refused to allow Grandmother to see the children and she has not seen them since.

5. Grandfather and other family members are not restricted from seeing the children.

6. There is extreme acrimony between the Grandmother and Mother. Grandmother stated in deposition that she wished her son would divorce Mother especially after the children are grown. She further stated at trial that years ago in the "swerving" incident if her son had not been in the car she would probably have hit the other vehicle (occupied by Mother). She also stated there can be no peace between she [sic] and Stephanie (the Mother) and that there is extreme tension between them due to numerous confrontations.

7. More recently there was an incident when Grandmother went to the children's school on Grandparents' Day af-

ter allegedly being told not to do so. This action upset [S1 Grayson].

8. There was also testimony by a neighbor of Mother and Father, Ms. Conley, that Grandmother sought information from her regarding the parents. Ms. Conley testified that Mother and Father were good parents and the children were well adjusted.

9. Mother and Father assert in retrospect that they would have curtailed contact with Grandmother sooner but desired to maintain peace.

10. Grandmother indicated that with all she and Grandfather have done for the Mother and Father (employment, housing, babysitting, money help with the wedding, etc.) they have not shown much appreciation.

11. By all testimony Mother and Father are fit parents.

". . . a fit parent has a superior right, constitutionally, to all others in making decisions regarding raising of his or her children, including who may and may not visit them. A fit parent's decision must be given deference by the Courts, and Courts considering the issue must presume that a fit parent's decision is in the child's best interest." *Vibbert v. Vibbert*, 144 S.W.3d 242 (Ky.App.2004).

12. The Court has reviewed the various factors set out in *Vibbert*, supra and finds that:

a. there is no testimony that the relationship between the Grandchildren and Grandmother was unstable;

b. time spent together was significant until 2 years ago;

c. under the extremely tense relationship of the Parties the detriments of normal visitation outweigh its benefits;

d. visitation with Grandmother probably would not affect the children's relationship with their parents;

e. the Parties have emotional issues that would affect normal visitation. The emotional relationship with each other, i.e. Grandmother with Father and Mother especially is horrible.

f. from the G.A.L. Report it is not clear whether the children have any desire to see their Grandmother.

13. There was no evidence presented by either side as to the children being deprived by a lack of visits with Grandmother. It was acknowledged by Mother and Father that it would be best for the children in a normal situation to have contact with Grandparents.

14. *King v. King,* 828 S.W.2d 630, 632 (Ky.1992) relied on by Grandmother states, "one of the main purposes of the statute (KRS 405.021) is to prevent a family quarrel of little significance to disrupt a relationship which should be encouraged rather than destroyed." Unfortunately, in this case the problem between the Parties is very deep.

15. While this Court strongly desired this matter be worked out the Parties have been adamant that their relationship is totally fractured.

16. *King,* supra states, "That grandparents and grandchildren normally have a special bond cannot be denied. Each benefit from contact with the other." 828 S.W.2d 630, 632. It is in the children's best interest not to have the relationship with their Paternal Grandparents totally destroyed. Father testified there would be no visits with Grandmother while the children were minors. Unfortunately, in the present case not even the Paternal Grandfather is visiting with the grandchildren herein. The evidence was clear and convincing due to the mandates in *King v. King.* Under the circumstances of this case very little contact is appropriate in the children's best interest.

17. Nothing herein prevents additional visits by Grandfather or a later reconciliation of the Parties' differences.

The trial court referred to the car swerving incident in findings no. 4 and no. 6. With respect to that incident, Appellee gave the following testimony in this proceeding:

Q 143: Did you ever threaten Stephanie [Grayson]?

A. No, all I did was swerve at them on the road. And I wouldn't because he [her son Shane] was in the vehicle—I wouldn't hit them.

Q: Do you consider that dangerous at all, to swerve [your vehicle] into the path of an oncoming vehicle?

A. Sure it is. Sure it is. If Shane [her son] hadn't been in it I'd probably hit it.

Q464: Mrs. Grayson, did I understand you to say that you don't think that you contributed to the problem here today?

A. No, I did not.

Q465: Not at all?

A. No.

Q466: You have not contributed in any way to this situation?

A. No, I did not.

Appellee also testified at trial as follows:

Q: You don't care if it [i.e., slander of the Appellants] hurts them or not do you?

A. No.

Q. No, you don't. Can you repeat that please? You don't care if it hurts them or not do you?

A. I don't care. As long as they don't let me see the kids, I don't care what happens to them [the Appellants].

A guardian *ad litem* represented the children in the trial court. The report of the guardian *ad litem* was unambiguous:

> Should the Court deny the Petitioner's request for visitation, it is my opinion there will be no resulting harm to the children. On the other hand, should the Court grant the Petitioner's visitation, I believe it will endanger this happy family. Petitioner's husband, Dave, is not a party to this action and presumably could resume his relationship with the grandchildren. While he testified that he stopped seeing them because it was not fair to his wife, it was also not fair to his grandchildren. Perhaps, in time, if he can reestablish his relationship with the children, they might naturally express their desire to visit with their Nanny. In the meantime, I agree with the opinion of the neighbor, Mrs. Conley, that the Petitioner must humble herself and accept Stephanie as her daughter-in-law and the mother of these children. In sum, I do not believe that Court imposed visitation would be in the best interest of these children and I cannot recommend it.

Despite this state of evidence, the trial court granted Appellee limited visitation rights with Appellants' two little girls. She was granted a modest two visits per year, one in December and one in July, each for four hours with such visits to be supervised by the children's father and one neutral party. The trial court seems to have based its conclusion upon language in *King v. King*, 828 S.W.2d 630, 632 (Ky. 1992), as follows:

> One of the main purposes of the statute [KRS 405.021] is to prevent a family quarrel of little significance to disrupt a relationship which should be encouraged rather than destroyed.... That grandparents and grandchildren normally have a special bond cannot be denied.

Each benefits from contact with the other.

Trial courts are granted authority to require grandparent visitation by virtue of KRS 405.021. That statute states, in relevant part:

> The Circuit Court may grant reasonable visitation rights to either the paternal or maternal grandparents of a child and issue any necessary orders to enforce the decree if it determines that it is in the best interest of the child to do so.

KRS 405.021(1). With respect to the circumstances in which grandparent visitation may be ordered, this Court has held

> the courts must consider a broad array of factors in determining whether the visitation is in the child's best interest, including but not limited to: the nature and stability of the relationship between the child and the grandparent seeking visitation; the amount of time spent together; the potential detriments and benefits to the child from granting visitation; the effect granting visitation would have on the child's relationship with the parents; the physical and emotional health of all the adults involved, parents and grandparents alike; the stability of the child's living and schooling arrangements; the wishes and preferences of the child. *The grandparent seeking visitation must prove, by clear and convincing evidence, that the requested visitation is in the best interest of the child.* We retain this standard of proof from *Scott* [*Scott v. Scott*, 80 S.W.3d 447 (Ky.App.2002)], noting that the Supreme Court has mandated its use when "the individual interests at stake in a state proceeding are both particularly important and more substantial than mere loss of money." *Santosky v. Kramer*, 455 U.S. 745, 756, 102 S.Ct. 1388, 71 L.Ed.2d 599 (1982) (citation omitted). Given that these cases

involve the fundamental right of parents to raise their children as they see fit without undue interference from the state, the use of this heightened standard of proof is required.

*Vibbert v. Vibbert,* 144 S.W.3d 292, 295 (Ky.App.2004) (emphasis added). In *King v. King, supra,* a divided Supreme Court of Kentucky upheld the constitutionality of KRS 405.021 and provided guidance for its application. The *King* Court held that the statute did not unduly intrude on the fundamental rights of the parents and that the evidence supported the conclusion that paternal grandparent visitation was appropriate. In reaching its conclusion, the *King* majority expressed an idealized view of the inherent value of the relationship between grandparents and grandchildren. In dissent, Justice Lambert recognized the value of warm relations between grandparents and their grandchildren, but expressed concern that the statute opened the door to unwarranted invasion of an intact family. Justice Wintersheimer dissented on the view that the evidence did not meet the requirements of the statute even if the statute was constitutional. Nevertheless, the *King* majority was persuaded that the evidence supported the trial court's decision to grant visitation. It pointed to testimony that the child's father had no reluctance about the grandfather's ability to love and care for the child. There was no doubt expressed as to safety or care during periods of visitation. The Court concluded with the view "[t]here appears to be no valid reason that a trivial disagreement between father and son should be allowed to deprive a grandparent and grandchild from developing the natural affinity so common between these family members." *King,* 828 S.W.2d at 633. Earlier in the *King* opinion, the majority had commented, "[o]ne of the main purposes of the statute is to prevent a family quarrel of little significance to disrupt a relationship which should be encouraged rather than destroyed." *Id.* at 632.

In contrast, perhaps, with the foregoing Kentucky authorities, the Supreme Court of the United States has cast doubt on the viability of grandparent visitation statutes with the following observation: "In light of this extensive precedent, it cannot now be doubted that the Due Process Clause of the Fourteenth Amendment protects the fundamental right of parents to make decisions concerning the care, custody, and control of their children." *Troxel v. Granville,* 530 U.S. 57, 66, 120 S.Ct. 2054, 2060, 147 L.Ed.2d 49 (2000).

█ From the evidence in this case, we see no need to grapple with the nuances of federal constitutional law for the evidence presented by Appellee did not meet the statutory standard of KRS 405.021. This statute imposes upon a grandparent who seeks visitation the burden of proving that it is in the best interest of the child or children to have such visitation. Such proof must be by clear and convincing evidence. *Vibbert,* 144 S.W.3d at 295. Our review of this record reveals little or no evidence that visitation with Appellee would be in the best interest of the Grayson children. Indeed, virtually all of the evidence is to the contrary. As shown by the trial court's findings, Appellee has engaged in extraordinary acts of hostility toward the children's mother and father. In the words of the trial court,

> there is extreme acrimony between the Grandmother and Mother. Grandmother stated in deposition that she wished her son would divorce Mother especially after the children are grown. She also stated that there could be no peace between she [sic] and Stephanie [the Mother] and that there is extreme tension

between them due to numerous confrontations.

Borrowing from the language in the *King* majority, the state of discord prevailing here is far more than a "trivial disagreement" and exceeds the bounds of a "family quarrel of little significance."

Requiring a child to have visitation with a grandparent who has extreme animosity toward the child's parent would be inherently unhealthy for the child and would potentially undermine the relationship between the child and its parent. The evidence in this case does not meet the standard that visitation with Appellee would be in the children's best interest. The trial court appears to have relied more or less exclusively on the views expressed in *King v. King.* The trial court said as much: "The evidence was clear and convincing due to the mandates in *King v. King.* Under the circumstances of this case very limited contact is appropriate in the children's best interest."

We respect the views of the distinguished trial court. If this case were governed by an abuse of discretion standard, we might be inclined to uphold the judgment of very limited visitation between Appellee and her grandchildren. We discern an endeavor by the trial court to preserve a thread in the torn fabric of this family. But this was not a discretionary ruling by the trial court. The court was required to apply KRS 405.021 and determine whether visitation was affirmatively proven by clear and convincing evidence to be in the children's best interest. Applying this standard, we can reach no conclusion other than that the trial court erred as a matter of law in its conclusions and judgment upon the evidence.

Accordingly, the judgment is reversed.

ALL CONCUR.