RENDERED: NOVEMBER 19, 2021; 10:00 A.M.
NOT TO BE PUBLISHED

# Commonwealth of Kentucky

# Court of Appeals

NO. 2020-CA-1014-MR

TERRI LIGON             APPELLANT

       APPEAL FROM MCCRACKEN CIRCUIT COURT
v.        HONORABLE DEANNA HENSCHEL, JUDGE
         ACTION NO. 19-CI-00979

LAUREN LIGON AND
JOHNNY HENSLEY            APPELLEES

OPINION
AFFIRMING

** ** ** ** **

BEFORE: CALDWELL, CETRULO, AND JONES, JUDGES.

CETRULO, JUDGE: This is an appeal from McCracken Circuit Court denying an action for grandparent visitation. For reasons that will be set forth herein, we affirm the judgment of the circuit court.

## FACTUAL BACKGROUND

Lauren Ligon (Mother) and Johnny Hensley (Father),[1] the Appellees, are the biological parents of W.H. (Child). Mother and Father recently ceased Child's visits with the Appellant, Terri Ligon (Grandmother). The adult parties have a tumultuous relationship with an alleged history of domestic violence, with Grandmother as the perpetrator. Mother and Father pointed to this history as one of the reasons they altered the structure of the visits from frequent and unsupervised to infrequent and supervised before ending visits altogether. There is no indication in the record of violence by Grandmother with regard to Child, and in fact, Grandmother appears to have been very involved with Child until July of 2019.

In hopes of reinstating a regular visitation schedule, Grandmother filed a petition for grandparent visitation on November 4, 2019. The circuit court held an evidentiary hearing on the petition on July 7, 2020 where Grandmother testified that prior to 2019 she babysat Child regularly when Mother was away and allowed Mother and Child to live with her for a two-and-a-half-month period. Mother confirmed those statements and further testified to the hostile relationship between Mother and Grandmother that has persisted since Mother's childhood.

---

[1] Father elected not to file a brief in this appeal, although he is named as an appellee. Father participated in the proceedings below without the assistance of counsel.

Mother also testified that she began to see Grandmother behave in ways that reminded her of Grandmother's behavior during Mother's youth. Then, Mother altered visits with Grandmother and allowed only infrequent, supervised visits before ending visits altogether. Following the hearing, the circuit court denied Grandmother's petition for grandparent visitation, citing Grandmother's failure to meet the burden of proof necessary to overrule Mother and Father's decision to end visits. This appeal followed.

## STANDARD OF REVIEW

When reviewing findings of fact, we apply a clearly erroneous standard. CR[2] 52.01. "The determination of a child's best interests is a factual finding and the standard of review is whether the finding of fact was clearly erroneous. A finding of fact is clearly erroneous only if it is manifestly against the great weight of the evidence." *Addison v. Addison*, 463 S.W.3d 755, 765 (Ky. 2015) (citing *Frances v. Frances*, 266 S.W.3d 754 (Ky. 2008)). When reviewing legal conclusions, we apply a *de novo* standard. *Nash v. Campbell Cty. Fiscal Court*, 345 S.W.3d 811, 816 (Ky. 2011). This appeal addresses (1) legal conclusions regarding the interpretation of KRS[3] 405.021(1); and (2) the circuit

---

[2] Kentucky Rules of Civil Procedure.

[3] Kentucky Revised Statute.

court's determination of a child's best interest.  Therefore, we review the first question *de novo* and the second question under a clearly erroneous standard.

## ANALYSIS

Pertinent to our analysis,[4] Grandmother contends the circuit court erred in two respects:  (1) it considered the relationship between Grandmother and Mother; and (2) it found Grandmother did not meet the requisite threshold to overcome the parents' decision.  We disagree.

As to the first point, Grandmother is incorrect.  KRS 405.021(1) provides that "[t]he Circuit Court may grant reasonable visitation rights to either the paternal or maternal grandparents of a child and issue any necessary orders to enforce the decree if it determines that it is in the best interest of the child."  And in determining what is in the best interest of the child, the court must consider a "broad array of factors"

> including but not limited to:  the nature and stability of the relationship between the child and the grandparent seeking visitation; the amount of time spent together; the potential detriments and benefits to the child from granting visitation; the effect granting visitation would have on the child's relationship with the parents; the physical and emotional health of all the adults involved, parents and grandparents alike; the stability of the child's

---

[4] Grandmother also argues the circuit court improperly took notice of a 2009 order of protection because, in her view, the judge's reference to it was "vague", and because it was entered in 2009. Because we can properly adjudicate this matter without reliance on the 2009 order of protection, it is unnecessary to discuss this issue.

living and schooling arrangements; the wishes and preferences of the child.

*Vibbert v. Vibbert*, 144 S.W.3d 292, 295 (Ky. App. 2004).

The use of the qualifier "including but not limited to," as set forth above, clearly signifies that this is not an exhaustive list. Therefore, it is expected that courts will consider factors outside of those explicitly listed, using the above as a guide. One such factor this Court has considered is the relationship between a child's mother and grandmother. *Grayson v. Grayson*, 319 S.W.3d 426, 432 (Ky. App. 2010). In *Grayson*, the Court considered the grandmother's actions toward the parents in determining whether the parents' decision to end visitation was in the child's best interest. *Id.* For these reasons, we disagree with Grandmother's assertion that the circuit court should not have considered Grandmother and Mother's relationship.

Next, Grandmother claims that visitation is in Child's best interest and should overcome Mother and Father's decision to stop visits. In support, she notes that she loves Child, and that Child (along with Mother) resided with her for a short period of time two years ago. She further notes that around that time, and up until March of 2020, she saw Child regularly and babysat Child while Mother was away. She therefore believes reinstating visitation is in Child's best interest.

We disagree. The circuit court made clear, and we agree, there is no doubt that Grandmother loves Child; nor is it disputed that Child and Mother

-5-

resided with her for a period and that she regularly babysat Child. But, those are not the metrics for assessing a child's best interests. Rather, the starting point for such analysis is to determine whether the parents are fit because there is a "constitutional presumption that a fit parent acts in the child's best interest[.]" *Pinto v. Robison*, 607 S.W.3d 669, 674 (Ky. 2020) (citation omitted). *See also Vibbert*, 144 S.W.3d at 294 ("[A] fit parent has a superior right, constitutionally, to all others in making decisions regarding the raising of his or her children, including who may and may not visit them. A fit parent's decision must be given deference by the Courts, and Courts considering the issue must presume that a fit parent's decision is in the child's best interest."). Here, Grandmother testified that Mother and Father are "excellent parents," and there is no dispute that Mother and Father are indeed fit. Therefore, it was the duty of the circuit court to presume that Mother and Father, in denying Grandmother's visitation, were acting in the best interest of their child.

To overcome this presumption, Grandmother must meet a clear and convincing evidence threshold:

> The grandparent petitioning for visitation must rebut this presumption with clear and convincing evidence that visitation with the grandparent is in the child's best interest. In other words, the grandparent must show that the fit parent is clearly mistaken in the belief that grandparent visitation is not in the child's best interest. If the grandparent fails to present such evidence to the

> court, then parental opposition alone is sufficient to deny the grandparent visitation.

*Pinto*, 607 S.W.3d at 674 (quoting *Walker v. Blair*, 382 S.W.3d 862, 871 (Ky. 2012)). *See also Hartlage v. Hartlage*, 601 S.W.3d 495, 500 (Ky. App. 2020).

To determine whether a parent is "clearly mistaken in the belief that grandparent visitation is not in the child's best interest," the circuit court must rely upon the *Walker* factors:

> 1) the nature and stability of the relationship between the child and the grandparent seeking visitation;
>
> 2) the amount of time the grandparent and child spent together;
>
> 3) the potential detriments and benefits to the child from granting visitation;
>
> 4) the effect granting visitation would have on the child's relationship with the parents;
>
> 5) the physical and emotional health of all the adults involved, parents and grandparents alike;
>
> 6) the stability of the child's living and schooling arrangements;
>
> 7) the wishes and preferences of the child; and
>
> . . .
>
> 8) the motivation of the adults participating in the grandparent visitation proceedings.

*Walker*, 382 S.W.3d at 871.

Here, as discussed, Grandmother notes that she loves Child, and she points out that Child and Mother lived with her for a short period of time. She also notes that she regularly babysat Child while Mother was away. But, this Court has found generalized representations of a close relationship do not meet the standard of clear and convincing evidence needed to overcome the parental presumption.[5] *See, e.g.*, *Grayson*, 319 S.W.3d at 428, 431 (this Court found the grandmother "did not meet the statutory standard of KRS 405.021" where the grandmother asserted visitation was in the child's best interest because the grandmother provided housing and babysat, even where time spent together was significant).

Similarly, in *Goodlett*, this Court stated that focusing only on the grandmother and child's "long-established and close relationship" is not enough to overcome the parental presumption. *Goodlett*, 544 S.W.3d at 664. There, the mother and child resided with the grandmother for an extended period, and the grandparent was the primary daycare provider for most of the child's life. *Id*. at 663-64. Still, the Court determined that was not enough to outweigh the parental

---

[5] *Goodlett v. Brittain*, 544 S.W.3d 656, 665 (Ky. App. 2018) ("Ideally, the parties should be able to work through their differences for the benefit of the child. But where a grandparent seeks the intervention of the courts to compel visitation, the decision of the parent must prevail absent a clear and convincing showing by the grandparent in favor of such visitation.").

presumption because the "mere existence of a close relationship" alone is not sufficient. *Id.* at 662.[6]

Based upon these authorities, and the circuit court's consideration of the facts presented at the evidentiary hearing, it is clear the circuit court did not abuse its discretion. Here, the circuit court properly noted that the evidence does not overcome the presumption that Mother and Father's decision to cease visitation was in Child's best interest. Therefore, the circuit court properly concluded that it could not force the relationship against Mother and Father's wishes, even while expressing encouragement for preservation of the grandparent/grandchild relationship.

**CONCLUSION**

In short, Grandmother did not meet the requisite burden of proof to sustain her action. Consequently, we AFFIRM the order of the McCracken Circuit Court.

ALL CONCUR.

---

[6] "[T]he mere existence of a close relationship between the grandparents and the children, or the fact that the children lived in the grandparents' home for a time, will not always be sufficient to overcome the parental presumption." *Id*.

BRIEF FOR APPELLANT:

Heather L. Jones
Paducah, Kentucky

BRIEF FOR APPELLEE LAUREN LIGON:

John Straub
Paducah, Kentucky

NO BRIEF FILED FOR APPELLEE JOHNNY HENSLEY.