RENDERED: APRIL 15, 2022; 10:00 A.M.
NOT TO BE PUBLISHED

# Commonwealth of Kentucky

# Court of Appeals

NO. 2021-CA-0473-MR

SHERRY G. BALLARD                                          APPELLANT

v.
APPEAL FROM NELSON CIRCUIT COURT
HONORABLE STEPHEN A. HAYDEN, JUDGE
ACTION NO. 15-CI-00446

BROOKS HOUCK                                               APPELLEE

OPINION
AFFIRMING

** ** ** ** **

BEFORE: CLAYTON, CHIEF JUDGE; CETRULO AND GOODWINE,
JUDGES.

CETRULO, JUDGE: This is an appeal from the Nelson Circuit Court of a

grandparent visitation case that has been pending for years and has already been

before this Court once before. This case presents tragic and challenging facts;

however, this Court is obligated to affirm the trial court, which denied the request

for visitation rights to the appellant, Sherry Ballard ("Grandmother").

# FACTS

Grandmother and her late husband Thomas ("Grandfather") are the maternal grandparents of E.P.H. (the "Grandparents"). Their daughter, Crystal Rogers, was the mother of E.P.H., and Appellee Brooks Houck ("Father") is the father of E.P.H. Crystal has been missing since July 3, 2015, and law enforcement officials have declared that she is presumed dead. As the sole living parent, Father has custody of E.P.H. Crystal had four other children, who are not Father's children, and those children have been in Grandmother's custody since Crystal's disappearance.

The Grandparents have long believed that Father was involved in the disappearance or death of their daughter. They have also long sought to have visitation with E.P.H., and Father has objected. Within about a year of Crystal's disappearance in 2015, Grandfather was shot and killed. No one has been charged with either of these two deaths. Grandmother, however, has maintained a billboard in Bardstown which states that Brooks Houck is the main suspect in Crystal's disappearance[1] and provides a number to call with new information. Grandmother has testified that she has participated in podcasts and news interviews stating her belief that Father was responsible for Crystal's disappearance and confirming that she does not like him. Despite this animosity for Father, Grandmother has sought

---

[1] This is according to local law enforcement.

visitation rights with E.P.H. since shortly after Crystal's disappearance. The procedural history has been torturous to say the least.

In December of 2015, the Nelson Circuit Court entered an order granting the Grandparents temporary visitation with E.P.H. The circuit court subsequently entered a series of orders expanding visitation, and then entered a final order granting grandparent visitation rights in September 2017. The circuit judge concluded that

> [t]he court believes that both [Father] and the
> [Grandparents] came into the hearing with the
> motivation of protecting E.P.H.'s best interest; they
> simply have differing opinions as to what is in his best
> interest.
>
> After considering all the relevant facts the court has
> determined that [Father] is mistaken in his belief that
> visitation with the [Grandparents] is not in E.P.H.'s best
> interest. The court understands [Father]'s position
> given the current tension between [Grandmother], her
> late husband and himself. However, the court believes
> that [Grandmother] is a loving grandmother and will not
> say or do things in E.P.H.'s presence that would harm
> his relationship with [Father].

Father appealed that ruling to this Court and in November 2018, a prior panel of this Court entered an Opinion reversing that award. This Court specifically held that

> [w]e are of the opinion that the trial court not only failed
> to apply the correct evidentiary standard but essentially
> placed the burden on [Father] to show visitation was not
> in E.P.H.'s best interest, when, in fact, it was

-3-

[Grandmother]'s burden to prove, by clear and
convincing evidence, that [Father] was clearly mistaken
in his belief.

*Houck v. Ballard*, No. 2017-CA-001692-ME, 2018 WL 5778773, *4 (Ky. App. Nov. 2, 2018).

Father's belief, alluded to above, was that visitation with the Grandparents was not in his child's best interest. In 2018, this Court thus remanded the matter to the Nelson Circuit Court for a new evidentiary hearing, stating as follows:

> The evidence herein unquestionably establishes that the relationship between the parties is plagued by acrimony and that the hostility between them is unlikely to abate. Under such circumstances, the added strain of the trial court's intrusion upon the relationship between [Father] and E.P.H. is manifest. As previously noted, *Walker*[2] warned that grandparent visitation should not be ordered where it was clearly detrimental to the parent-child relationship. *Id.* at 872. As in *Grayson,* we appreciate the trial court's attempt "to preserve a thread in the torn fabric of this family." *Id.* at 432. The circumstances herein are tragic at best, and we are sympathetic to [Grandmother's] desire for visitation with her grandson. Nevertheless, after reviewing the record as a whole, we are compelled to conclude that the trial court failed in both according the decision of [Father], as a fit custodial parent, any material weight, and failing to require [Grandmother] to provide by clear and convincing evidence that [Father's] decision was mistaken.

*Id.* at *5.

---

[2] *Walker v. Blair*, 382 S.W.3d 862, 872 (Ky. 2012).

-4-

At this point, some other significant facts occurred. While the matter was pending before this Court in 2017, the Kentucky Legislature added a new section to the grandparent visitation statute, KRS[3] 405.021. That provision seemed to be directly applicable to these facts, *i.e.*, where one parent is deceased. The amendment to subsection 1(b) specifically provided that, *in those circumstances*, "there shall be a rebuttable presumption that visitation with the grandparent is in the best interest of the child if the grandparent can prove a pre-existing significant and viable relationship with the child." Subsection 1(c) then set out the means by which a grandparent could establish that relationship by a preponderance of evidence. Both of those subsections were subsequently declared unconstitutional, as Grandmother concedes. However, there was a brief time when that statute was the law of the land, and the evidence present in this case appeared to keep with that statute.

Then, in September 2020, the circuit court conducted a hearing on Grandmother's continuing motions for visitation, as this Court directed. Unfortunately for her, at that time the Kentucky Supreme Court declared subsections 1(b) and 1(c) of KRS 405.021 to be unconstitutional in *Pinto v. Robison*, 607 S.W.3d 669, 670 (Ky. 2020). In *Pinto*, our Supreme Court unanimously held that "[t]he statute, on its face, runs afoul of a parent's

---

[3] Kentucky Revised Statute.

fundamental constitutional right to the care and custody of his or her child." *Id.* at 675.

On February 20, 2021, the new Nelson Circuit Court judge assigned to this matter, Judge Stephen Hayden, entered findings and conclusions of law based upon *Pinto* and the record – including the September 2020 hearing. The trial court therefore followed *Pinto*, analyzed the requisite factors, and addressed the controlling statute, which created a presumption that a parent is fit and acting in the child's best interests when considering a motion for visitation.

The Nelson Circuit Court thus outlined the factors set forth in *Walker v. Blair*,[4] which this Court had found to be missing in the previous appellate decision. That prior decision had specifically found that the previous trial court ruling did not place "sufficient weight on the hostility between the parties and did not articulate its decision based upon the clear and convincing standard." In an attempt to comply with this Court's directive on remand, the lower court denied Grandmother visitation, and this appeal resulted.

In so ruling, the Nelson Circuit Court specifically addressed the continued hostility between Father and Grandmother and her admission that there had been no change in the hostility level since this Court's prior order of reversal. During the hearing, Grandmother provided evidence that she would instruct all

---

[4] *Walker*, 382 S.W.3d at 871.

family members to refrain from saying anything disparaging about Father during visitation that might be granted with E.P.H. Father presented evidence that E.P.H. knew the picture on the billboard is of his biological mother, that E.P.H. could read, and that he knew that his "grandmother hates his father." There was evidence that E.P.H. was excited to see his half-siblings and Grandmother at a recent encounter at Walmart, but there was also evidence that it has now been several years since there has been any other contact between E.P.H. and Grandmother.

This time frame is unfortunate but is the result of the prior ruling of this Court and some delays that do not appear to be the fault of either party. Much of the evidence that the new circuit judge had to consider was simply the testimony from the initial hearings in 2015. However, there were several hours of testimony presented via Zoom in 2020, and this Court has reviewed all of that information. As the court below stated in its decision, Father believes contact with the Grandmother would alienate him from his child. While the Court believes that both parties are motivated to protect the best interest of E.P.H., they simply have differing opinions as to what is in his best interest.

**STANDARD OF REVIEW**

A family court's factual findings are reviewed for clear error, and therefore, the clearly erroneous standard is used. *Moore v. Asente*, 110 S.W.3d

336, 354 (Ky. 2003); CR[5] 52.01. Further, a finding supported by substantial evidence is not clearly erroneous. *Moore*, 110 S.W.3d at 354. Substantial evidence is that which is "sufficient to induce conviction in the mind of a reasonable person." *Rearden v. Rearden*, 296 S.W.3d 438, 441 (Ky. App. 2009) (citation omitted). Moreover, we must give due regard to the family court's opportunity "to judge the credibility of the witnesses." CR 52.01. Nonetheless, statutory interpretation and application of the appropriate standard to the facts are issues of law and, consequently, are reviewed *de novo. Hill v. Thompson*, 297 S.W.3d 892, 895 (Ky. App. 2009) (citation omitted).

It is well established that the circuit court was required to presume that Father was acting in his child's best interest. This presumption in favor of the fit parent is mandated by the seminal United States Supreme Court decision in *Troxel v. Granville*, 530 U.S. 57, 120 S. Ct. 2054, 147 L. Ed. 2d 49 (2000). *Troxel* was predicated on the notion that the state should not ordinarily "inject itself into the private realm of the family to further question the ability of [the] parent to make the best decisions concerning the rearing of that parent's children." *Id*. at 68-69, 120 S. Ct. at 2061. The Court therein held that the Due Process Clause of the Fourteenth Amendment gives parents a fundamental liberty interest in the care, custody, and control of their children and a presumption that fit parents act in the

---

[5] Kentucky Rule of Civil Procedure.

best interests of their children.  *Id.*  Indeed, the United States Supreme Court held that due process demands courts presume fit parents to act in their child's best interest, and *only permit grandparent visitation over a parent's objections upon a showing by the grandparents that a lack of visitation harms the child.  Id.* at 74, 120 S. Ct. at 2064.

In *Walker*, the Kentucky Supreme Court discussed the impact of *Troxel* on our grandparent visitation statute as it existed prior to the aforementioned amendments in 2018.  *Walker*, 382 S.W.3d at 866.  The Supreme Court found the statute to be constitutional at that point but set forth factors that must be shown in order to comport with *Troxel*, and for any court to grant visitation over the objections or wishes of a parent.  *Id.* at 871.

This Court's 2018 decision in this case discussed those factors and found the previous trial court's ruling was lacking because it failed to hold the grandparent to the clear and convincing standard adopted in *Walker*.  Those factors are as follows:

> 1) the nature and stability of the relationship between the child and the grandparent seeking visitation;
>
> 2) the amount of time the grandparent and child spent together;
>
> 3) the potential detriments and benefits to the child from granting visitation;

4) the effect granting visitation would have on the child's relationship with the parents;

5) the physical and emotional health of all the adults involved, parents and grandparents alike;

6) the stability of the child's living and schooling arrangements; and,

7) the wishes and preferences of the child.

To this list, we add:

8) the motivation of the adults participating in the grandparent visitation proceedings.

*Id.*

As we consider each of those factors in light of *Pinto*, it appears that the circuit judge did not err in applying the facts and considering the evidence pursuant to those factors. The court below specifically noted the prior stability of the relationship between E.P.H. and Grandmother and the amount of time that they had spent together in the years before his mother went missing. The court considered the potential detriment and benefit that visitation would bring to the child, but also noted that visitation had previously caused a negative effect on the relationship between Father and E.P.H. There was no indication that the physical health of the adults involved was a factor, but the stability of the child's current living and schooling arrangements was discussed. There was no interview of the child, but one is not required nor raised on this appeal. There was testimony that

the lack of contact with E.P.H. negatively impacted the half-siblings, but there was no testimony that E.P.H. had been negatively affected. While Father's motivation to deny visitation for this child with his own half-siblings and his Grandmother appear to be harsh to this Court, that alone is not enough to find that the circuit court erred. Moreover, it is understandable based on the testimony that the Grandmother's continued public comments against Father are such that he does not believe visitation could be free from any suggestion of his involvement in the mother's presumed death.

In *Massie v. Navy*, the Kentucky Supreme Court reversed this Court, and reinstated the trial court ruling, which had denied visitation to the grandparent, stating as follows:

> Although the trial court's order denying [the grandmother] visitation was brief, it is clear that the court considered several relevant factors in reaching its decision. The record also indicates that the court considered [the grandmother's] extensive testimony wherein she voiced her concerns and motivation for seeking visitation. Therefore, we cannot say that the trial court's factual findings were clearly erroneous or that its application of those facts to the relevant law was error.

*Massie v. Navy*, 487 S.W.3d 443, 447 (Ky. 2016).

Every case is certainly different, and *Walker* recognizes the fact-intensive nature of ruling on requests for grandparent visitation. *Walker*, 382 S.W.3d at 871. The Supreme Court clarified in *Massie* that because "the facts of

-11-

each case dictate which *Walker* factors are most relevant and possibly dispositive . . . all eight *Walker* factors need not be considered[.]" *Massie*, 487 S.W.3d at 447.

The *Walker* Court further recognized that granting grandparent visitation over the objection of the parents can be especially burdensome to the parent-child relationship when "animosity exists between the parent and grandparent[,]" and concluded that such visitation "should not be granted if it is clearly detrimental to the parent-child relationship." *Walker*, 382 S.W.3d at 872.

Where this Court previously analyzed these factors under similar circumstances, it has come to similar conclusions. *Hamilton v. Duvall*, 563 S.W.3d 697, 701 (Ky. App. 2018) (reversing the family court's grant of visitation and concluding that despite the loving relationship between grandparents and child, the family court erred when it failed to determine "that child was harmed by refusing more visitation[.]"); *Grayson v. Grayson*, 319 S.W.3d 426, 432 (Ky. App. 2010) (quotation omitted) (reversing the trial court's grant of visitation because the "state of discord prevailing [was] far more than a trivial disagreement and exceed[ed] the bounds of a family quarrel of little significance.").

Unlike those cases, however, the circuit court here did properly consider the *Walker* factors and denied Grandmother's petition for visitation. Therefore, we simply cannot find that the trial court erred in its determination

based upon these specific and heart-wrenching facts. Grandmother may feel

justified in her concerns about Father, but he has not been charged with any crime

related to her daughter's disappearance, despite the seven years that have passed

since the event. Grandmother has not taken down the billboard or changed the

wording to remove Father's name, which the evidence suggests the child can read.

Further, there was evidence that she continues to make frequent public and

disparaging comments to multiple media sources suggesting that Father is

responsible. These facts go beyond a family quarrel of little significance. That,

with the fact that there was no evidence presented to suggest the child is suffering

any harm by denying grandparent visitation, reflects that the result is appropriate.

While it is understandable that Grandmother continues to advocate for

answers regarding her daughter's disappearance and yearns for a relationship with

her grandson, those wishes simply are not enough to overcome the presumption in

favor of the parent's wishes. This Court is sympathetic to Grandmother and we

recognize her desire to be involved in E.P.H.'s life; however, this Court cannot be

persuaded by emotion and must act according to the laws of this Commonwealth.

This Court must uphold the trial court's decision, as the statute imposes upon a

grandparent who seeks visitation the burden to prove by clear and convincing

evidence that it is in the best interest of the child to have such visitation. *Grayson*,

319 S.W.3d at 431. Further, it includes a presumption that the parent's preferences are in the best interests of the child. *Id.*

Previously, this Court instructed the circuit court to apply KRS 405.021 and determine whether visitation was affirmatively proven by clear and convincing evidence to be in the child's best interest. Applying this standard, we can reach no conclusion other than that the trial court complied with its obligation and the prior instructions of this Court. It complied with the law as set forth by our Supreme Court and the United States Supreme Court, and as such, we likewise affirm the Nelson Circuit Court in its conclusions and judgment upon the evidence presented.

ALL CONCUR.


BRIEF FOR APPELLANT:

Phyllis K. Lonneman
Elizabethtown, Kentucky

BRIEF FOR APPELLEE:

Jeremy S. Aldridge
Elizabethtown, Kentucky